# Exhibit A

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

P.O. Box HM 3212, Hamilton HM NX, Bermuda
Swan Building, 1st Floor, 26 Victoria Street, Hamilton HM 12, Bermuda
Phone: 441-292-7633 ♦ Fax: 441-295-7562 ♦ Email: info@mic.bm ♦ www.mutualinsurance.bm

# DECLARATIONS
## Certificate of Indemnity No. 0315-10073-15

In consideration of the Premium, and of the statements in the Application of the **Named Insured**, the **Company's** Global Media Liability Policy 2.0 (Claims Made Form) is hereby extended to insure:

Item **1**: **Named Insured**                 Time Inc.

Item **2**: Address of **Named Insured**      225 Liberty Street
                                              New York, NY 10281
                                              U.S.A.

Item **3**: **Covered Media**                 See attached Endorsements

Item **4**: Media Liability Agreement

| | | | |
|---|---|---|---|
| **a.** | Retention | US$250,000 | Each **Event** |
| **b.** | Limit of Liability | US$15,000,000 | Each **Event** |
| **c.** | **Defense Expense** Co-Insurance (if applicable) | 0% | Each **Event** |

Item **5**: Media Supplemental Payments Agreements

| | | | |
|---|---|---|---|
| **a.** | **Criminal Legal Expense** Retention | US$10,000 | Each **Event** |
| **b.** | **Criminal Legal Expense** Limits of Liability | US$25,000 US$100,000 | Each **Event**/ Annual Aggregate |
| **c.** | **First Amendment Legal Expense** Retention | US$10,000 | Each **Event** |
| **d.** | **First Amendment Legal Expense** Limits of Liability | US$25,000 US$250,000 | Each **Event**/ Annual Aggregate |
| **e.** | **Subpoena Legal Expense** Retention | US$10,000 | Each **Event** |
| **f.** | **Subpoena Legal Expense** Limits of Liability | US$50,000 US$250,000 | Each **Event**/ Annual Aggregate |
| **g.** | Contempt Legal Expense Retention | US$10,000 | Each **Event** |
| **h.** | Contempt Legal Expense Limits of Liability | US$25,000 US$100,000 | Each **Event**/ Annual Aggregate |
| **i.** | Contempt of Court Fines and Penalties Retention | US$10,000 | Each **Event** |
| **j.** | Contempt of Court Fines and Penalties Limits of Liability | US$25,000 US$100,000 | Each **Event**/ Annual Aggregate |

Item **6**: **Covered Professional Services** Liability Agreement (if purchased)

| | | | |
|---|---|---|---|
| **a.** | Retention | US$250,000 | Each **Event** |
| **b.** | Limit of Liability or Sub-Limit of Liability | US$15,000,000 | Each **Event** |
| **c.** | **Defense Expense** Co-Insurance (if applicable) | 0% | Each **Event** |

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

Item **7**: **Period of Insurance**          March 1, 2016 to March 1, 2017
Both days at 12:01 a.m. at the address of the
**Named Insured**

Item **8**: **Retroactive Date**                          June 6, 2014

Item **9**: Premium                                     US$644,000.00

IN WITNESS WHEREOF, the **Company** has caused this Certificate to be countersigned by its Secretary at Hamilton, Bermuda.

Date:  March 7, 2016

Mutual Insurance Company Limited

*Lucia Kempe*

Lucia Kempe
Secretary

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

P.O. Box HM 3212, Hamilton HM NX, Bermuda
Swan Building, 1st Floor, 26 Victoria Street, Hamilton HM 12, Bermuda
Phone: 441-292-7633 ♦ Fax: 441-295-7562 ♦ Email: info@mic.bm ♦ www.mutualinsurance.bm

**ENDORSEMENT**      to be attached to and forming part of Certificate No.  0315-10073-15 of Global Media Liability Policy 2.0 (Claims Made Form)

---

Endorsement No.:    1
Issued On:          March 7, 2016
Effective Date:     March 1, 2016
**Named Insured**:      Time Inc.

---

## GENERAL AMENDATORY COVERAGE ENDORSEMENT

READ THE ENTIRE POLICY CAREFULLY TO DETERMINE
YOUR RIGHTS AND RESPONSIBILITIES.

The **Named Insured** and the **Company** agree that **SECTION IV. DEFINITIONS**, **H. Covered Media**, is amended as follows:

    **Covered Media** means:

1.    the media-related entities or operations of the **Named Insured** or any **Subsidiary**; provided that such media-related entities are owned or operated by the **Named Insured** or any **Subsidiary** at the Effective Date of this Endorsement; or

2.    any entity that meets the requirements of **SECTION VI. GENERAL CONDITIONS**, **F. Changes in Covered Media**.

All other Policy terms and Conditions remain unchanged.

IN WITNESS WHEREOF, the **Company** has caused this Endorsement to be countersigned by its Secretary at Hamilton, Bermuda.

Date:  March 7, 2016                    Mutual Insurance Company Limited

Lucia Kempe
Secretary

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

P.O. Box HM 3212, Hamilton HM NX, Bermuda
Swan Building, 1st Floor, 26 Victoria Street, Hamilton HM 12, Bermuda
Phone: 441-292-7633 ♦ Fax: 441-295-7562 ♦ Email: info@mic.bm ♦ www.mutualinsurance.bm

**ENDORSEMENT**      to be attached to and forming part of Certificate No. 0315-10073-15 of Global Media Liability Policy 2.0 (Claims Made Form)

Endorsement No.:      2
Issued On:              March 7, 2016
Effective Date:         March 1, 2016
**Named Insured**:      Time Inc.

## BRANDING AMENDATORY COVERAGE ENDORSEMENT

READ THE ENTIRE POLICY CAREFULLY TO DETERMINE YOUR RIGHTS AND
RESPONSIBILITIES.  THIS ENDORSEMENT MAY APPLY RETROACTIVELY
TO PREDECESSOR POLICIES AND PROVIDE A LOWER RETENTION.

The **Named Insured** and the **Company** agree that **SECTION I. INDEMNITY AGREEMENT**, **A. Media Liability Agreement**, **5.**, is amended to include the following:

**5.**   With respect to a covered **Claim** for infringement of title, slogan, logo, trademark, trade name, trade dress, service mark or service name, including infringement arising from domain names and the use of metatags, arising from an **Event** committed during the **Period of Insurance** and relating to the **Insured's** own title, mark, logo, slogan, domain name, metatag or other branding indicia (hereinafter "marks") used in connection with **Covered Media**, any **Claim** arising from such **Event** shall be subject to a US$2,000,000 Retention, a US$2,000,000 Limit of Liability and a US$2,000,000 annual aggregate Limit of Liability.  If however, the first such **Event** took place prior to the **Period of Insurance** but after the **Retroactive Date**, and there are no allegations that the **Insured** has abandoned the marks; the following shall apply:

   i.   any **Claim** arising from such an **Event** when the **Insured's** first use of the marks in commerce took place more than one year prior to the issue date of this Endorsement, shall be subject to a US$1,500,000 Retention, a US$2,000,000 Limit of Liability and a US$2,000,000 annual aggregate Limit of Liability;

   ii.   any **Claim** arising from such an **Event** when the **Insured's** first use of the marks in commerce took place more than two years prior to the issue date of this Endorsement, shall be subject to a US$1,000,000 Retention, a US$2,000,000 Limit of Liability and a US$2,000,000 annual aggregate Limit of Liability;

   iii.   any **Claim** arising from such an **Event** when the **Insured's** first use of the marks in commerce took place more than three years prior to the issue date of this Endorsement, shall be subject to a US$500,000 Retention, a US$2,000,000 Limit of Liability and a US$2,000,000 annual aggregate Limit of Liability.

The Limits of Liability set forth in this Endorsement are part of and not in addition to the Limits of Liability stated in the Declarations.  The aggregate Limit of Liability shall apply to all **Events** arising under this Endorsement.

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

This Endorsement shall not apply if the **Claim** arises from a mark, logo, slogan or other branding indicia registered by the **Insured** in the United States Patent and Trademark Office at the time such **Claim** is first tendered to the **Insured**.

All other Policy terms and conditions shall remain unchanged.

IN WITNESS WHEREOF, the **Company** has caused this Endorsement to be countersigned by its Secretary at Hamilton, Bermuda.

Date:  March 7, 2016                                    Mutual Insurance Company Limited

Lucia Kempe
Secretary

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

P.O. Box HM 3212, Hamilton HM NX, Bermuda
Swan Building, 1st Floor, 26 Victoria Street, Hamilton HM 12, Bermuda
Phone: 441-292-7633 ♦ Fax: 441-295-7562 ♦ Email: info@mic.bm ♦ www.mutualinsurance.bm

**ENDORSEMENT**  to be attached to and forming part of Certificate No.  0315-10073-15 of Global Media Liability Policy 2.0 (Claims Made Form)

---

Endorsement No.:  3
Issued On:  March 7, 2016
Effective Date:  March 1, 2016
**Named Insured**:  Time Inc.

---

## CONTINGENT BODILY INJURY AND PROPERTY DAMAGE AMENDATORY COVERAGE ENDORSEMENT

READ THE ENTIRE POLICY CAREFULLY TO DETERMINE
YOUR RIGHTS AND RESPONSIBILILTIES.

The **Named Insured** and the **Company** agree that **SECTION V. EXCLUSIONS**, **D.**, is deleted in its entirety and replaced with the following:

**D.**  for or arising out of actual or alleged **Bodily Injury** or **Property Damage**, except this Exclusion shall not apply to:

1. **Bodily Injury** or **Property Damage** arising solely from a covered **Claim** for emotional distress under **SECTION I.  INDEMNITY AGREEMENT**, **A. Media Liability Agreement**;

2. **Bodily Injury** or **Property Damage** arising exclusively from the content of **Material**;

All other Policy terms and Conditions remain unchanged.

IN WITNESS WHEREOF, the **Company** has caused this Endorsement to be countersigned by its Secretary at Hamilton, Bermuda.

Date: March 7, 2016

Mutual Insurance Company Limited

Lucia Kempe
Secretary

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

P.O. Box HM 3212, Hamilton HM NX, Bermuda
Swan Building, 1st Floor, 26 Victoria Street, Hamilton HM 12, Bermuda
Phone: 441-292-7633 ♦ Fax: 441-295-7562 ♦ Email: info@mic.bm ♦ www.mutualinsurance.bm

**ENDORSEMENT**     to be attached to and forming part of Certificate No. 0315-10073-15 of Global Media Liability Policy 2.0 (Claims Made Form)

Endorsement No.     4
Issued On:          March 7, 2016
Effective Date:     March 1, 2016
**Named Insured**:     Time Inc.

## COVERED PROFESSIONAL SERVICES LIABILITY AMENDATORY COVERAGE ENDORSEMENT

READ THE ENTIRE POLICY CAREFULLY TO DETERMINE
YOUR RIGHTS AND RESPONSIBILITIES.

The **Named Insured** and the **Company** agree that **SECTION I. INDEMNITY AGREEMENT** is amended to add the following:

### B. Covered Professional Services Liability Agreement

The **Company** shall indemnify the **Insured** for **Loss** and **Defense Expense** in excess of the Retention and within the applicable Limit of Liability stated in Item **6.b.** of the Declarations because of liability imposed by law or **Assumed Under Contract** as a result of any **Claim** relating to an **Event** committed by or on behalf of the **Insured** between the **Retroactive Date** set forth below and the end of the **Period of Insurance** and arising from an actual or alleged negligent act, error or omission in the providing or performance of **Covered Professional Services**, including the failure to provide or perform same. Such **Claim** shall have been first made against the **Insured** during the **Period of Insurance** or any Discovery Period.

**SECTION IV. DEFINITIONS** is amended to include the following:

**Covered Professional Services** means when selected:

(X) the creation and placement of **Advertising** for others (**Retroactive Date**: June 6, 2014);
(X) the design, creation and management of websites and other electronic facilities for others (**Retroactive Date**: June 6, 2014);
_____ commercial printing for others  (**Retroactive Date**: _____, 20__);
_____ other: _____ (**Retroactive Date**: _____, 20__).

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

**SECTION IV. DEFINITIONS**, **A.**, **C.**, **J.**, **M.** and **X.** are deleted in their entirety and replaced with the following**:**

**A.** **Additional Insured** means:

**1.** any individual or entity added to the Policy as an **Additional Insured** by Endorsement or certificate of insurance; or

**2.** any individual or entity the **Named Insured** agrees to name as an **Additional Insured** in writing prior to **Loss**;

but only if the **Insured** provided or performed **Covered Professional Services** for the **Additional Insured**, and if the liability of the **Additional Insured** was vicariously caused by the **Insured** and not directly caused.

\*        \*        \*

**C.** **Assumed Under Contract** means liability assumed by the **Insured** in any hold harmless or indemnity agreement or provision, but only with respect to **Covered Professional Services** provided by the **Insured** for others and for the types of **Claims** covered by this Endorsement.

\*        \*        \*

**J.** **Event** mean the providing or performance of **Covered Professional Services** for others, including the failure to provide or perform same.

\*        \*        \*

**M.** **Loss** means all forms of monetary judgment, award or settlement, including any actual, statutory, compensatory, punitive, multiplied or exemplary damages; pre-judgment and post-judgment interest on any portion of a judgment; and court costs, fees and expenses awarded to prevailing third parties.  Coverage for punitive damages is unequivocal.  The **Company** shall not raise the uninsurability of punitive damages as a coverage defense.

**Loss** shall not include:

1. taxes, civil or criminal fines, sanctions or penalties;

2. production costs or other overhead, restitution, unjust enrichment, disgorgement of profits, royalties, license payments or commissions, regardless of how any of the foregoing are plead or characterized;

3. costs of the **Insured** to recall, correct, provide, perform or re-perform **Covered Professional Services**; or

4. costs to comply with an injunction.

\*        \*        \*

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

**X.** **Related Event** means the repetition or continuation of **Covered Professional Services** relating to the same project and client.

**SECTION V. EXCLUSIONS** has been amended as follows:

For any **Claim** arising under this Endorsement, **SECTION V. EXCLUSIONS**, **C.**, is deleted in its entirety and replaced with the following:

**C.** brought by any **Subsidiary**, joint venture or **Additional Insured** or any individual or entity whose liability has been **Assumed Under Contract**, or any **Claim** made by a current or former shareholder, director, officer, trustee, partner, member, employee, employment applicant or by a spouse, domestic partner, civil union partner, heir, executor, administrator or legal representative; provided, this Exclusion shall not apply to any **Additional Insured** or any individual or entity, whose liability has been **Assumed Under Contract**, if such **Additional Insured**, individual or entity is unaffiliated with the **Insured** and is a customer or client.

For any **Claim** arising under this Endorsement, **SECTION V. EXCLUSIONS**, **M.** is deleted in its entirety.

For any **Claim** arising under this Endorsement, **SECTION V. EXCLUSIONS** is amended to add the following Exclusions:

**AA.** for or arising out of the liability of any third party **Assumed Under Contract** by the **Insured**, unless the **Insured** would have been liable in the absence of such contract or agreement;

**BB.** for or arising out of the rendering of services or the providing of products for any nuclear, air traffic control, life support or weapons operations or systems;

**CC.** for or arising out of the **Insured's** providing or performance of **Covered Professional Services** or failure to provide or perform same prior to the effective date of the **Period of Insurance** or any **Retroactive Date**;

**DD.** for or arising out of false arrest, detention or imprisonment, abuse of process, harassment or stalking, invasion of the right of private occupancy, including wrongful entry or eviction, trespass by any individual or unmanned aircraft, eavesdropping or wiretapping;

**EE.** for or arising out of discrimination and civil rights violations because of race, association, gender, sexual orientation, age, national origin, citizenship, ethnicity, ancestry, religion, physical or mental disability or economic or marital status;

**FF.** for or arising out of ordinary wear and tear, gradual deterioration or failure to maintain the **Insured's** computer hardware, software, operating systems, memory storage, electronic data and any other electronic information necessary for the rendering or execution of **Covered Professional Services**.

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

All other Policy terms and conditions shall remain unchanged.

IN WITNESS WHEREOF, the **Company** has caused this Endorsement to be countersigned by its Secretary at Hamilton, Bermuda.

Date:  March 7, 2016

Mutual Insurance Company Limited

Lucia Kempe
Secretary

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

P.O. Box HM 3212, Hamilton HM NX, Bermuda
Swan Building, 1st Floor, 26 Victoria Street, Hamilton HM 12, Bermuda
Phone: 441-292-7633 ♦ Fax: 441-295-7562 ♦ Email: info@mic.bm ♦ www.mutualinsurance.bm

**ENDORSEMENT**   to be attached to and forming part of Certificate No.  0315-10073-15 of Global Media Liability Policy 2.0 (Claims Made Form)

---

Endorsement No.:   5
Issued On:   March 7, 2016
Effective Date:   March 1, 2016
**Named Insured**:   Time Inc.

---

## GENERAL AMENDATORY COVERAGE ENDORSEMENT

READ THE ENTIRE POLICY CAREFULLY TO DETERMINE
YOUR RIGHTS AND RESPONSIBILITIES.

Item **8.** of the Declarations is amended as follows:

The **Retroactive Date** for **Covered Media** is May 30, 2001; except the **Retroactive Date** is October 17, 2000 for the media-related entities of IPC Media Limited, provided that such media-related entities are owned or operated by IPC Media Limited at the Effective Date of this Endorsement.

All other Policy terms and Conditions remain unchanged.

IN WITNESS WHEREOF, the **Company** has caused this Endorsement to be countersigned by its Secretary at Hamilton, Bermuda.

Date:  March 7, 2016

Mutual Insurance Company Limited

Lucia Kempe
Secretary

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

P.O. Box HM 3212, Hamilton HM NX, Bermuda
Swan Building, 1st Floor, 26 Victoria Street, Hamilton HM 12, Bermuda
Phone: 441-292-7633 ♦ Fax: 441-295-7562 ♦ Email: info@mic.bm ♦ www.mutualinsurance.bm

**ENDORSEMENT**      to be attached to and forming part of Certificate No. 0315-10073-15 of Global Media Liability Policy 2.0 (Claims Made Form)

---

Endorsement No.:      6
Issued On:             March 7, 2016
Effective Date:        March 1, 2016
**Named Insured**:       Time Inc.

---

## EMPLOYED LAWYER LIABILITY AMENDATORY COVERAGE ENDORSEMENT

READ THE ENTIRE POLICY CAREFULLY TO DETERMINE
YOUR RIGHTS AND RESPONSIBILITIES.

The **Named Insured** and the **Company** agree that the Declarations of the Policy have been amended to add the following:

### Employed Lawyer Liability Declarations

| | | | |
|---|---|---|---|
| a. | **Employed Lawyer** Retention | US $250,000 | Each **Event** |
| b. | **Employed Lawyer** Limits of Liability | US $1,000,000/ | Each **Event**/ |
| | | US $1,000,000 | Annual Aggregate |
| c. | **Subpoena Expense** Retention | US $10,000 | Each **Event** |
| d. | **Subpoena Expense** Limits of Liability | US $50,000/ | Each **Event**/ |
| | | US $250,000 | Annual Aggregate |

With respect to this Endorsement, **SECTION I. INDEMNITY AGREEMENT** is amended to add the following:

### Employed Lawyer Professional Liability Coverage Agreement

The **Company** shall indemnify the **Insured Person** for **Loss** and **Defense Expense** in excess of the **Employed Lawyer** Retention and within the **Employed Lawyer** Limits of Liability set forth in this Endorsement as a result of any **Claim** arising out of an **Event** committed by the **Insured Person** between the **Retroactive Date** set forth in Item **8.** of the Declarations and the end of the **Period of Insurance**.  Such **Claim** shall have been first made against the **Insured Person** during the **Period of Insurance** or any Discovery Period.

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

**Named Insured or Subsidiary Indemnification Coverage Agreement**

The **Company** shall indemnify the **Named Insured** or any **Subsidiary** for **Loss** and **Defense Expense** in excess of the **Employed Lawyer** Retention and within the **Employed Lawyer** Limits of Liability set forth in this Endorsement because of liability imposed by law as a result of any **Claim** arising out of an **Event** committed by the **Insured Person** between the **Retroactive Date** set forth in Item **8.** of the Declarations and the end of the **Period of Insurance**.  Such **Claim** shall have been first made against the **Insured Person** during the **Period of Insurance** or any Discovery Period.

With respect to this Endorsement, **SECTION II. MEDIA SUPPLEMENTAL PAYMENTS AGREEMENTS** is deleted in its entirety and replaced with the following:

### SECTION II. EMPLOYED LAWYER SUPPLEMENTAL PAYMENTS AGREEMENTS

Employed Lawyer Supplemental Payments shall be paid in addition to the Limit of Liability set forth in Item **4.** of the Declarations and shall be subject to a separate Sub-Limit of Liability and Retention obligation, as set forth in this Endorsement, unless otherwise specified.  A co-insurance requirement, wherein a percentage in excess of the Retention is paid by the **Named Insured**, may also apply and shall be set forth in the Declarations.

As a condition to coverage hereunder, the **Named Insured** must promptly notify the **Company** by any expedient means of the circumstance, proceeding, act or **Event** giving rise to coverage under these supplemental coverage parts.

All Policy terms, conditions and Exclusions shall apply hereto.

## A.  Subpoena Legal Expense

The **Company** shall indemnify the **Insured Person** for **Subpoena Legal Expense** in excess of the **Subpoena Legal Expense** Retention and within the **Subpoena Legal Expense** Limits of Liability as stated herein, for **Subpoena Legal Expense** incurred by the **Insured Person** in responding  to a subpoena if:

   **1.**   the subpoena seeks **Material** or testimony arising out of an **Event** committed by the **Insured Person** between the **Retroactive Date** and the end of the **Period of Insurance**;

   **2.**   Neither the **Insured Person** nor any **Insured** is a party to the legal proceeding in which the subpoena has been issued; and

   **3.**   the subpoena is served within the **Period of Insurance**.

Multiple subpoenas arising from the same **Event** or **Related Events** shall be considered a single expense for which the **Subpoena Legal Expense** Retention and **Subpoena Expense** Limits of Liability apply.  Multiple subpoenas arising from the same **Event** or **Related Events** shall relate back to the **Subpoena Legal Expense** Retention and **Subpoena Legal Expense** Limits of Liability in effect at the time when the subpoena was first served upon the **Insured Person**.  The **Subpoena Legal Expense** Limits of Liability shall be in addition to the Limit of Liability stated in Item **4.** of the Declarations.

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

**B. Witness Expense**

The **Company** shall indemnify the **Named Insured** up to two hundred fifty dollars ($250) per **Named Insured's** employee for each day that the employee is required to appear at a trial, deposition, hearing or alternative dispute resolution proceeding attributable to a covered **Claim** or a circumstance or act covered under **SECTION II. EMPLOYED LAWYER SUPPLEMENTAL PAYMENTS AGREEMENTS**.  A five thousand dollar ($5,000) Witness Expense Limit of Liability aggregate shall apply to each such **Event**.  The Witness Expense Limit of Liability shall be paid in addition to the Limit of Liability stated in Item **4.** of the Declarations and shall not be subject to the Retention stated in Item **4.** of the Declarations.

With respect to this Endorsement, **SECTION III. RETENTION, LIMITS OF LIABILITY, DATE OF CLAIMS MADE, EVENTS AND RELATED EVENTS, DISCOVERY PERIOD**, **A. - E.**, are deleted and replaced with the following:

**A. Retention**

The **Employed Lawyer** Retention is the dollar amount stated in this Endorsement and for which the **Insured** or **Insured Person** is responsible to pay for any combination of **Defense Expense** or **Loss** before the **Company** is obligated to indemnify the **Insured** or **Insured Person** for any subsequent expenditures.  The **Employed Lawyer** Retention shall apply to each **Event** or **Related Event**, but shall not reduce the **Employed Lawyer** Limits of Liability.

**B. Limits of Liability**

The **Employed Lawyer** Limits of Liability is the maximum dollar amount that will be reimbursed by the **Company** for any combination of **Loss** or **Defense Expense** arising out of an **Event** or **Related Event** in excess of the **Employed Lawyer** Retention.  The **Employed Lawyer** Limits of Liability apply regardless of the number of (i) **Insureds** or **Insured Persons** under the Policy, (ii) persons or entities sustaining **Loss**, (iii) Indemnity Agreements, (iv) **Events** or **Related Events**, or (v) **Claims**.  The **Employed Lawyer** Limits of Liability available to indemnify the **Insured Person** for **Loss** or **Defense Expense** shall not exceed the amount set forth in this Endorsement applicable to each **Event** or **Related Event**.

If the **Employed Lawyer** Limits of Liability is exhausted by the payment of **Loss** or **Defense Expense** with respect to any **Event**, all obligations of the **Company** shall be completely fulfilled.

**C. Date of Claims Made**

A **Claim** shall be considered as being first made against the **Insured Person** at the earlier of the following times:

**1.** when written **Claim** is first made against the **Insured Person** seeking **Loss**, equitable relief or other enforcement of a legal right; or

**2.** when written notice is first tendered to the **Company**, by or on behalf of the **Insured Person**, of specific circumstances involving an **Event**, which may result in a **Claim** for **Loss**, equitable relief or other enforcement of a legal right.

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

If more than one **Claim** is made, which arises out of the same **Event**, all subsequent **Claims** shall be deemed to have been made at the time the first of such **Claims** is made against the **Insured Person**.

**D.  Date of Events and Related Events**

**1.**  All **Related Events** shall be deemed one **Event** that happened on the date that **Employed Lawyer Professional Services** were first provided and shall constitute a single **Claim**.

**2.**  If an **Event** first happened or is deemed to have first happened prior to the **Retroactive Date**, this shall be considered a single **Claim** and outside the **Period of Insurance**.  Any such **Event** that continues following the inception of **Retroactive Date** shall relate back to the first **Event** outside the **Period of Insurance**.

**3**.  **Related Events** shall not create any obligations by the **Company** under more than one Policy issued by the **Company**.

**4**.  If any **Event** or **Related Event** is covered under more than one **SECTION I. INDEMNITY AGREEMENT** under the Policy or by Endorsement, only one Indemnity Agreement shall apply.  If the Limits of Liability applicable to the Indemnity Agreements are not the same, the Limit of Liability most favorable to the **Insured Person** shall apply to the **Event** or **Related Event**.

**E.  Discovery Period**

If the Policy is cancelled by the **Company** other than for non-payment of the premium, if the **Company** or the **Named Insured** do not renew the Policy for any reason, or if there are **Changes** in the **Named Insured** or **Subsidiary** as set forth in **SECTION VI. GENERAL CONDITIONS, F., Changes in the Named Insured or Subsidiary**, the **Named Insured** or any surviving entity shall have the right to purchase a Discovery Period in which a **Claim** may be made against the **Insured Person** for a further period of thirty-six (36) months following the termination of the Policy, subject to the following:

**1.**  the **Named Insured** makes a written request for the Discovery Period, which is received by the **Company** within sixty (60) days after the date the Policy is terminated, with payment of an additional premium calculated at 100% of the last annual Premium.  The Discovery Period will not take effect until the premium is paid.  Once effective, this extension shall not be cancelled by the **Company**;

**2.**  the Discovery Period applies only to **Claims** first made during the Discovery Period based solely on any **Event** committed or alleged to have been committed between the **Retroactive Date** and the end of the **Period of Insurance**;

**3**.  the purchase of the Discovery Period shall not increase the (applicable) Limits of Liability stated in the Declarations;

**4**.  if the **Named Insured** does not elect to purchase the Discovery Period, any **Insured Person** shall have the right to purchase such Discovery Period, which shall only apply to the **Employed Lawyer Professional Liability Coverage Agreement** set forth herein.  Such Discovery Period shall not apply to the **Named Insured or Subsidiary Indemnification**

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

**Coverage Agreement** in this Endorsement nor to the **Named Insured**, **Subsidiary** or any **Insured Person** who does not purchase the Discovery Period.

    **a.** An **Insured Person** has thirty (30) days to elect to purchase the Discovery Period after the **Named Insured's** right to purchase such Discovery Period has expired. An **Insured Person** electing to purchase such Discovery Period must notify the **Company** of his or her intent in writing. Upon receipt of such written notice, the **Company** shall promptly notify the **Insured Person** of the additional premium for the Discovery Period, which is conditioned upon the **Insured Person** paying such additional premium within fifteen (15) days after receiving written notification of the additional premium that is due.

With respect to this Endorsement, **SECTION IV. DEFINITIONS** has been amended to add the following new Definitions:

*     *     *

**Employed Lawyer** means any person admitted to practice law by the highest Court of any State or the Supreme Court of the United States, who is or was a full-time or part-time employee of the **Named Insured** or any **Subsidiary**, and performs legal services for the **Named Insured** or any **Subsidiary**.

**Employed Lawyer Professional Services** means:

    **1.** legal and notary services performed for the **Named Insured** or any **Subsidiary** by an **Employed Lawyer** and in the course and scope of employment;

    **2.** pro bono legal services performed by an **Employed Lawyer** as an advisor, director, officer, trustee, committee member, chair or volunteer for a **Non-Profit Entity**;

    **3.** pro bono legal services performed by an **Employed Lawyer** for indigent clients on a voluntary basis or as required by the **Named Insured** or any **Subsidiary** or by the bar association of which the **Employed Lawyer** is a member;

    **4.** **Moonlighting Legal Services**, but only with the prior written authorization of the **Named Insured** or any **Subsidiary**; or

    **5.** legal professional services performed by a **Legal Assistant** or paralegal, but only while acting under the supervision and direction of an **Employed Lawyer**.

*     *     *

**Insured Person** means any **Employed Lawyer**, **Independent Contractor Attorney**, **Legal Assistant** or **Temporary Attorney**, including:

    **1.** the estate, heirs, administrators, executors or legal representatives of an **Insured Person** in the event of the death, incapacity, insolvency or bankruptcy of such **Insured Person**, and only if the **Claim** would be covered against the **Insured Person**; or

    **2.** the **Insured Person's** spouse, civil union partner or domestic partner, but only if the **Claim** arises from such individual's relationship with the **Insured Person**, and only if the **Claim** would be covered against the **Insured Person**.

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

**Independent Contractor Attorney** means any person admitted to practice law and who performs legal services for the **Named Insured** or any **Subsidiary** pursuant to an independent contractor contract agreement and is not employed by a law firm.

\*        \*        \*

**Legal Assistant** means any person who is or was a full-time or part-time employee of the **Named Insured** or any **Subsidiary** for the purpose of assisting an **Employed Lawyer**.

\*        \*        \*

**Moonlighting Legal Services** means legal services performed for others by an **Employed Lawyer** outside the course and scope of his or her employment for the **Named Insured** or any **Subsidiary**, including any employee, executive, officer, member, director or manager of same, and solely while such **Employed Lawyer** is a full-time or part-time employee; provided **Moonlighting Legal Services** shall not include:

1. legal services performed by an **Employed Lawyer** who is an employee, officer, member, director or equivalent position of an entity unrelated to the **Named Insured** or any **Subsidiary**;

2. legal services performed by an **Employed Lawyer** for a trust or estate wherein such **Employed Lawyer** is also the beneficiary of such trust or estate.

\*        \*        \*

**Non-Profit Entity** means an organization other than the **Named Insured** or any **Subsidiary** and which is exempt from taxation under Section 501(c)(3) of the Internal Revenue Code, as amended.

\*        \*        \*

**Personal Injury** means:

1. libel, criminal libel, slander, product or personal disparagement, trade libel or other forms of defamation or tort relating there to;

2. invasion or infringement of, or interference with, the right of privacy or publicity, including but not limited to intrusion upon seclusion, public disclosure of private facts, unwarranted or wrongful publicity, false light invasion of privacy or commercial appropriation of name, likeness or persona;

3. false arrest, detention, imprisonment, abuse of process or malicious prosecution;

4. invasion of the right of private occupancy, including wrongful entry or eviction, and trespass by an individual.

\*        \*        \*

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

**Temporary Attorney** means a person admitted to practice law and who was or is providing full-time or part-time services to the **Named Insured** or any **Subsidiary** through a temporary legal staffing agreement.

With respect to this Endorsement, the following **SECTION IV. DEFINITIONS**, **E.**, **I.**, **J.**, **L.**, **M.**, **N.**, **X.**, and **Z.** have been deleted in their entirety and replaced with the following:

\*　　\*　　\*

**E.  Claim** means:

 **1.** any initiation of a civil legal proceeding, even if groundless, false or fraudulent, seeking to hold an **Insured Person** solely responsible for **Loss**, seeking equitable relief or other legal right, or seeking pre-litigation discovery;

 **2.** any written demand or other notice, even if groundless, false or fraudulent, seeking to hold an **Insured Person** solely responsible for **Loss**, seeking equitable relief or other legal right, or seeking pre-litigation discovery;

 **3.** any demand or other notice seeking to commence an alternative dispute resolution proceeding against an **Insured Person**; or

 **4.** any request to toll or waive a statute of limitations relating to a potential **Claim** as set forth in subparts **1.** – **3.** above.

**Claim** does not include an investigation or assertion of a legal right by any administrative or regulatory agency nor does this Definition apply to **SECTION II. EMPLOYED LAWYER SUPPLEMENTAL PAYMENTS AGREEMENTS**, **A. Subpoena Legal Expense**.

\*　　\*　　\*

**I.  Defense Expense** means:

 **1.** reasonable legal fees and other necessary expenses incurred in the investigation, defense, negotiation, adjustment, alternative dispute proceeding, settlement or appeal of a **Claim**;

 **2.** premiums on appeal bonds and bonds to release attachments relatable to that portion of the bond within the applicable Limit of Liability stated in the Declarations or by Endorsement, although the **Company** is not responsible for procuring such bonds;

**Defense Expense** does not include expenses, salaries, benefits or other compensation of any **Insured**, **Insured Person**, **Named Insured**, **Subsidiary** or any employees.

**J.  Event** means any actual or alleged act, error, omission, misstatement, misleading statement, breach of duty, neglect or **Personal Injury** taking place during the performance of **Employed Lawyer Professional Services**, including the failure to perform same.

\*　　\*　　\*

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

**L.  Insured** means:

1.  the **Named Insured** or any **Subsidiary**, now existing or hereafter created, or any present or former shareholder, director, officer, trustee, partner, member or employee, but only while acting within the scope of their duties as such at the time of the **Event** giving rise to the **Claim**;

2.  the estate, heirs, administrators, executors or legal representatives of the **Insured** in the event of the death, incapacity, insolvency or bankruptcy of the **Insured**, but only if the **Claim** would have been covered against the **Insured**; or

3.  the **Insured's** spouse, civil union partner or domestic partner, but only if the **Claim** arises from or out of the individual's relationship as such or from the individual's ownership interest in the **Named Insured** or **Subsidiary**, and only if the **Claim** would have been covered against the **Insured**.

provided, however, this Definition does not include an **Insured Person**.

**M.  Loss** means all forms of monetary judgment, award or settlement, including any actual, statutory, compensatory, punitive, multiplied or exemplary damages, pre-judgment and post-judgment interest on any portion of a judgment, and court costs, fees and expenses awarded to prevailing third parties.  Coverage for punitive, multiplied or exemplary damages is unequivocal. The **Company** shall not raise the uninsurability of punitive damages as a coverage defense.

**Loss** shall not include:

1.  taxes, civil or criminal fines, sanctions or penalties;

2.  matters uninsurable under the law under which this Endorsement is construed with the exception of punitive, multiplied or exemplary damages;

3.  restitution, unjust enrichment, disgorgement of profits, fees, expenses or any costs paid to or charged by an **Insured Person** or the cost to re-perform **Employed Lawyer Professional Services**;

4.   costs to comply with an injunction or other form of non-monetary relief;

5.  overhead, salary, wages, commissions, employee benefits or monetary payments owed to any **Insured Person**, employee, officer, executive or manager of the **Named Insured** or any **Subsidiary**;

6.  any costs relating to the clean-up, removal, containment, treatment, detoxification, neutralization, assessment of, testing for, or monitoring of pollutants.

**N.  Material** means any content or communication in connection with **Employed Lawyer Professional Services**.

*       *       *

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

**X.**   **Related Event** means the repetition of any actual or alleged act, error, omission, misstatement, misleading statement, breach of duty, neglect or **Personal Injury** in the performance of **Employed Lawyer Professional Services** that arise from or relate to the same or related facts, circumstances, transactions, situations or client or the same or related series of facts, circumstances, transactions or situations.

*          *          *

**Z.**   **Subpoena Legal Expense** means reasonable legal and other professional fees to resist or respond to a subpoena seeking testimony or **Material** from the **Insured Person**.

*          *          *

With respect to this Endorsement, **SECTION V. EXCLUSIONS** has been deleted in its entirety and replaced with the following:

### SECTION V. EXCLUSIONS

The **Company** shall not be obligated to indemnify any **Insured** or **Insured Person** for any Employer Lawyer Supplemental Payment set forth in **SECTION II. EMPLOYED LAWYER SUPPLEMENTAL PAYMENTS AGREEMENTS** or for any **Loss** or **Defense Costs** arising from any **Claim:**

**A.**   for or arising out of any actual or alleged intentional violation of any statute, law or regulation or any criminal, fraudulent, dishonest or malicious act or omission by the **Insured Person** as determined by any final or non-appealable judicial, administrative or alternative dispute resolution adjudication or by any adverse admission, guilty plea, plea of *nolo contendere* or finding of fact; and if such finding, the **Insured Person** shall reimburse the **Company** for any **Defense Expense**.

For purposes of determining the applicability of this Exclusion:

**1.**   knowledge possessed by or conduct of an **Insured Person** shall not be imputed to any other **Insured Person,** who did not participate in or ratify such violation, act or omission;

**2.**   knowledge possessed by or conduct of the chief executive officer, chief operating officer, chief financial officer, chief technology officer, president, general counsel, publisher, risk manager, partner, member or principal, or equivalent management position, shall be imputed to the **Insured** and **Insured Person;**

**B.**   for or arising out of the gaining of any profit, remuneration or advantage by an **Insured Person** to which such **Insured Person** was not legally entitled as determined by any final or non-appealable judicial administrative or alternative dispute resolution adjudication or by any adverse admission, guilty plea, plea of *nolo contendere* or finding of fact; and if such finding, the **Insured Person** shall reimburse the **Company** for any **Defense Expense**.

For purposes of determining the applicability of this Exclusion:

**1.**   knowledge possessed by or conduct of an **Insured Person** shall not be imputed to any other **Insured Person**, who did not participate in or ratify such violation, act or omission;

**MUTUAL INSURANCE COMPANY LIMITED**
**GLOBAL MEDIA LIABILITY POLICY 2.0**
**(CLAIMS MADE FORM)**

**2.** knowledge possessed by or conduct of the chief executive officer, chief operating officer, chief financial officer, chief technology officer, president, general counsel, publisher, risk manager, partner, member or principal, or equivalent management position, shall be imputed to the **Insured** and **Insured Person**;

**C.** for or arising out of any actual or alleged violation of any law, order, regulation, policy, act or omission relating to:

**1.** employment-related practices, including but not limited to refusal to employ, wrongful termination of employment, discrimination, harassment or breach of employment contract; unpaid wages or overtime pay for hours worked or labor performed or for improper payroll deductions;

**2.** the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Occupational Safety and Health Act, including any amendments thereto or any regulation or orders promulgated thereunder, or any similar provisions of any federal, state, local or foreign statutory law or common law;

**3.** the Employee Retirement Income Security Act of 1974 and any amendments thereto or similar provisions of any federal, state or local statutes, regulations or common law upon fiduciaries of any pension, profit sharing, health and welfare or other employee benefit plan or trust;

**D.** for or arising out of any actual or alleged **Bodily Injury** or **Property Damage**; provided, this Exclusion shall not apply to **Bodily Injury** arising solely from a covered **Claim** for emotional distress arising from **Personal Injury**;

**E.** for or arising out of any actual or alleged patent infringement or contributing to or inducement to infringe a patent or for the theft or misappropriation of trade secrets;

**F.** for or arising out of any act, error, omission, **Event**, fact, circumstance or situation occurring prior to:

**1.** the **Retroactive Date** of the Policy; or

**2.** the inception of the **Period of Insurance**, if, on or before such date, the **Insured** or **Insured Person** knew or should have reasonably known or foreseen, that such conduct would result in a **Claim** against the **Insured Person**;

**G.** for or arising out of any act, error, omission, **Event**, fact, circumstance or situation:

**1.** that was the subject of any notice accepted under any policy or coverage, part of which this Policy is a renewal or replacement;

**2.** that has been the subject of notice to an **Insured Person** relating to a **Claim** or potential **Claim** or the subject of litigation, an investigation, or any of the foregoing currently pending or resolved by order, judgment, decree or settlement, prior to the earlier of the inception of the **Period of Insurance** or the applicable **Retroactive Date**; or

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

    **3.** involving any **Insured Person** before such person became, or after such person ceased to be, employed or under contract by the **Named Insured** or any **Subsidiary**;

**H.** for or arising out of:

    **1.** any legal action brought by or on behalf of any **Insured Person** against an **Insured** or any other **Insured Person**;

    **2.** any **Claim** against any **Insured Person** brought by or on behalf of an **Insured** or any entity that is operated, controlled or managed by such **Insured**;

**I.** for or arising out of any notarized certification or acknowledgment of a signature by an **Insured Person** without the physical appearance of the person purporting to sign the instrument at the time of such notarization;

**J.** for or arising out of any actual, alleged or threatened release, seepage, discharge, disposal or dispersal of, or any exposure to **Pollutants**; or the existence of **Pollutants** on any property; or any request, order, directive or demand to clean up, remove, test, monitor, contain, treat, detoxify or neutralize **Pollutants** or any voluntary offer to do so; or whether or not the presence or threat of **Pollutants** took place suddenly, accidentally, gradually or was intended or expected; or any actual or alleged **Property Damage**, **Bodily Injury**, emotional distress or any financial loss arising therefrom;

**K.** for or arising out of any actual or alleged violation of any law, order, regulation or act relating to:

    **1.** antitrust, price fixing, price discrimination, racketeering, restraint of trade, monopolization, or any unfair business practice or conspiracy related thereto;

    **2.** the offer, sale or purchase of securities or commodities;

**L.** for or arising out of any actual or alleged:

    **1.** unauthorized access, exceeding authorized access or wrongful access by false pretense or misrepresentation to any website, data, software, computing device, computer network or system, communications or internet system or service by the **Insured Person** or anyone acting on behalf of the **Insured Person**;

    **2.** intentional or accidental disclosure, breach, loss, theft, misappropriation or sale of first or third-party online or offline corporate or **Personally Identifiable Information** in the care, custody or control of the **Insured Person**;

    **3.** violation, omission or misrepresentation with respect to any internet or online user agreement, including but not limited to the "terms of use" or "privacy policy," by the **Insured Person** or any third party acting on behalf of the **Insured Person** pertaining to the collection, storage, use, disclosure, sharing or sale of confidential corporate information or **Personally Identifiable Information** or violation of any law regarding

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

same;

4. violation of state, federal or foreign law by the **Insured Person** with respect to the collection, storage, use, disclosure, sharing or sale of confidential corporate information or **Personally Identifiable Information**;

5. mechanical or electrical failure, outage, interruption or power surge, brownout or blackout, routine wear and tear, or other disruption or failure of any infrastructure service, network or utility supplied by a third party, including but not limited to power, water, gas, communications or connectivity;

6. failure of software, hardware or other technology to operate as intended; or

7. alteration of, failure of, or damage to any computer, computer program, computer database or computer system, including the infection of any of the foregoing with a computer virus;

With respect to this Endorsement, **SECTION VI. GENERAL CONDITIONS**, the following Condition, **SECTION VI. GENERAL CONDITIONS**, **A. Insured's Duties – Defense of Claims**, **1. Retraction or Correction**, has been deleted in its entirety.

With respect to this Endorsement, **SECTION VI. GENERAL CONDITIONS**, the following Conditions have been deleted and replaced with the following:

**A. Duties of the Insured and Insured Person – Defense of Claims**

Immediately after becoming aware of a **Claim** that may be subject to coverage under this Endorsement or facts or circumstances that may give rise to such **Claim**, the **Named Insured** or any **Subsidiary** and **Insured Person** shall conduct an investigation and take steps that are reasonable and prudent to defend against such **Claim**.

\*       \*       \*

**2. Notice of Claim**

The **Insured** or **Insured Person** shall promptly notify the **Company** of any potentially covered **Claim** under this Endorsement by any expedient means and utilize the "Mutual Claim Form" for such purpose.  Otherwise, notice shall include: (i) the name and address of any retained defense counsel, (ii) suit papers or other demand, (iii) relevant documents, (iii) the date that the **Event** took place, (iv) a narrative of the **Event** giving rise to the **Claim**, and (v) the date the **Insured** or **Insured Person** received notice of the **Claim**.  Notice shall be sent to:

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

Mutual Insurance Company Limited
Attention: Claims Administrator
P.O. Box HM 3212
Hamilton HM NX, Bermuda
Swan Building, 1st Floor
26 Victoria Street
Hamilton, HM 12, Bermuda
Phone:  441-292-7633
Fax:    441-295-7562
Email:  claims@mic.bm

**3.  Retention of Counsel**

The **Named Insured** shall retain counsel, subject to the continuing approval of the **Company**, for the defense of any **Claim** and shall pay all **Defense Expense** promptly. Counsel shall be retained within the time frame necessary to respond to the **Claim** and shall serve proper notice and pleadings within the requisite period.

**4.  Conduct of Defense and Cooperation**

   **a.**  With respect to any covered **Claim**, the **Insured** and **Insured Person** shall cooperate as follows:

      **i.**  provide all information reasonably requested by the **Company**;

      **ii.**  attend any proceeding recommended by defense counsel, including trial, and shall assist with discovery and procure necessary witnesses and documents; and

      **iii.**  no **Insured** or **Insured Person** shall make any admissions of liability.

   **b.**  For **Claims** within the **Employed Lawyer** Retention, the **Company** shall not be obligated nor called upon by the **Named Insured** to assume the defense or settlement of any **Claim**.  The **Named Insured** has a duty to keep the **Company** advised of the **Claim** and shall cooperate as follows:

      **i.**  report on **Claims** that are not in suit at regular quarterly intervals.  Reports shall include the status of the **Claim** and any relevant developments;

      **ii.**  promptly report any **Claim** that has evolved into litigation and shall provide notification of any complaint along with any corresponding documents.  **Claims** in suit should be reported quarterly, such reports to include information relevant to the defense, including without limitation, the factual background, the status of the litigation, the likelihood of the success or failure of defense, ongoing estimates of **Defense Expense**, offers of settlement, if any, and any other pertinent information;

      **iii**.  promptly report, in addition to quarterly reports, material developments in the defense, such as rulings on important motions, mediation or settlement conferences, trial settings and settlement offers, and shall promptly report any **Claim** that appears likely to exhaust the **Employed Lawyer** Retention.

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

**c.** For **Claims** excess the **Employed Lawyer** Retention, the **Company** shall not be obligated nor called upon by the **Named Insured** to assume the defense or any settlement.  The **Insured** and **Insured Person** shall cooperate and participate fully in the defense.  The **Named Insured** shall retain counsel as set forth in **SECTION VI. GENERAL CONDITIONS, A. Insured's Duties - Defense of Claims, 3. Retention of Counsel** and shall cooperate as follows:

  **i.** the **Company** shall have the right to associate in the defense and control of the **Claim**;

  **ii.** if the **Company** becomes dissatisfied with defense counsel retained by the **Named Insured**, the **Company** shall recommend new counsel to be jointly agreed to and approved by the **Named Insured** and the **Company** to take over the defense of the **Claim**.  Any recommendation of qualified defense counsel shall not be unreasonably denied by the **Named Insured**;

  **iii.** unless otherwise agreed, the **Named Insured** shall report on the status of **Claims** quarterly, with such reports to include information relevant to the defense, including without limitation, the factual background, the status of the litigation, an ongoing legal evaluation of the merits of the **Claim** and the likely outcome of the defense, ongoing estimates of **Defense Expense**, offers of settlement, if any, and any other pertinent information;

  **iv.** the **Named Insured** shall promptly report, in addition to the quarterly reports, material developments in the defense, such as rulings on important motions, mediation or settlement conferences, trial settings and settlement offers;

  **v.** the **Company** shall agree to reasonable intervals for reimbursing **Defense Expense** in excess of the **Employed Lawyer** Retention.

## B.  Settlement

The **Named Insured** may settle any **Claim**, if the total cost of **Defense Expense** and **Loss** is solely within the **Employed Lawyer** Retention.  If **Defense Expense** or **Loss** exhausts the **Employed Lawyer** Retention, no settlement shall be made without the **Company's** consent, which shall not be unreasonably withheld.  The **Company** may, with the consent of the **Insured Person** against whom a **Claim** has been made, settle any **Claim**, if the total cost of **Defense Expense** and **Loss** is excess the **Employed Lawyer** Retention.

*     *     *

## D.  Other Insurance

If there is other collectible insurance, including Directors and Officers Liability, Employment Practices Liability, Lawyers Professional Liability or any equivalent coverage for a **Claim** also covered by this Endorsement, the insurance afforded herein shall be excess over such insurance, except any insurance specifically issued as excess.  Notwithstanding the foregoing, for a **Claim** covered by this Endorsement, for which there is other valid and collectible insurance and for which **Defense Expense** is incurred**,** reasonable and customary **Defense Expense** which would otherwise be covered by this Endorsement, and which exceeds the amount the **Insured** or **Insured Person** recovers from said other insurance, shall be credited toward

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

fulfillment of the applicable Retention for such **Claim**.  Nothing in this provision is intended to waive the **Company's** right to subrogate against any other insurer for its failure to fulfill its duty to defend the **Insured** or **Insured Person** in any **Claim**, and neither the **Insured** nor the **Insured Person** shall undertake any action nor enter into any agreement with other insurers that would compromise the **Company's** right to subrogation, without the **Company's** express written consent.

**E. Time of Inception, Period of Insurance**

This Endorsement shall commence on the effective date stated in this Endorsement and continue in force until the expiration date also stated herein, unless earlier terminated.

**F. Changes in the Named Insured or Subsidiary**

**1. Acquisition of the Named Insured**

If during the **Period of Insurance**, any of the following takes place:

**a.** an acquisition of the **Named Insured**, or all or substantially all of its assets, by another entity, or a merger or consolidation of the **Named Insured** with another entity, such that the **Named Insured** is not the surviving entity; or

**b.** a person, entity or group of individuals or entities acquires the right to elect, appoint or designate 50% or more of the **Named Insured's** directors;

such **Named Insured** and any **Insured** or **Insured Person** thereof shall be subject to the terms and conditions of this Endorsement, but only for **Claims** arising solely from an **Event** taking place prior to the acquisition of the **Named Insured**.

**2. Acquisition, Creation or Cessation of a Subsidiary**

If during the **Period of Insurance**, the **Named Insured** acquires voting rights in an entity or forms a new entity, which results in a **Subsidiary**, then such **Subsidiary** and any **Insured Person** thereof shall be subject to the terms and conditions of this Endorsement for **Claims** arising solely from an **Event** first taking place after such acquisition or creation.

The Policy shall be extended to any **Subsidiary** if acquired or formed during the **Period of Insurance** for which the **Named Insured** is contractually obligated to provide coverage, provided that the **Named Insured** notifies the **Company** within ninety (90) days of such acquisition or for formation.  Any new **Subsidiary** shall be subject to underwriting approval, and the **Named Insured** shall pay any additional premium that may be required.

If during the **Period of Insurance**, an entity ceases to be a **Subsidiary**, any such **Subsidiary** and any **Insured Person** thereof shall be subject to the terms and conditions of this Endorsement until the Policy is terminated, but only for **Claims** arising solely from an **Event** taking place while such entity was a **Subsidiary**.

**G. Subrogation**

The **Company** shall be subrogated, to the extent of any payments made under the Endorsement, to all of the **Insured's** or **Insured Person's** rights of recovery.  Neither the

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

**Insured** nor **Insured Person** shall prejudice any subrogation rights and shall do whatever is necessary to secure such rights, but the **Named Insured** shall have sole discretion regarding the decision to exercise subrogation rights.  The **Company** shall have no subrogation rights against any **Insured** or **Insured Person**.  The apportioning of any recoveries shall be as follows:

1.  first, to offset any legal expense associated with the subrogation action;

2.  second, any entity or person (including the **Insured** or **Insured Person**), who has incurred any amount in excess of Retention up to the applicable Limit of Liability set forth in the Declarations, shall be reimbursed to the extent of any actual payment;

3.  third, the **Company** shall be reimbursed to the extent of any actual payment;

4.  finally, any remaining balance shall be paid to any person or entity (including the **Insured** or **Insured Person**), who has contributed to the Retention.

If there is no recovery from subrogation proceedings conducted solely by the **Company**, it shall bear the full expense thereof.

**H.  Payment, Indemnity and Proof of Loss**

**Loss** and **Defense Expenses** shall be paid in the currency of the United States of America.  If such amounts are set forth in currency of any other country, conversion shall be made in United States dollars at the rate of exchange published by a mutually agreed upon source on the date that the **Company's** financial obligation was incurred.

No indemnity shall be paid by the **Company** until such amount is paid or incurred by the **Insured** or **Insured Person** in excess of the **Employed Lawyer** Retention, and the **Insured Person** and **Insured** are in compliance with all provisions of this Endorsement.  Subject to any other provisions of this Endorsement, the **Company** shall reimburse the **Insured** or **Insured Person** for interim **Defense Expense** paid in excess of **Employed Lawyer** Retention upon receipt of satisfactory evidence that such amounts have been paid.  Such interim payments shall not prejudice the rights of the **Company** or the **Insured** or **Insured Person** with respect to the ultimate calculation of the amount of **Defense Expense** payable.  Proof of any **Loss** or **Defense Expense** paid in the aggregate by the **Insured** or **Insured Person** must be tendered to the **Company** within forty-five (45) days after the final payments have been made.  Such period of forty-five (45) days may be extended in writing by the **Company**.

**I.  Alternative Dispute Resolution**

If any disagreement arises as to the amount of any **Loss** or **Defense Expense** subject to indemnity under the Policy, the **Named Insured** agrees to submit to alternative dispute resolution.  The parties shall bear their own legal expense, but shall share equally in the cost of the proceeding.

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

**J.  Action against the Company**

No suit or action under the Policy or the recovery of any **Claim** hereunder shall be sustainable in any court of law or equity unless, as conditions precedent thereto:

1.  the **Insured** and any **Insured Person** have fully complied with all the requirements of the Policy, including but not limited to satisfaction of all **SECTION VI. GENERAL CONDITIONS**, and have paid the **Employed Lawyer** Retention in full; and

2.  such suit, action or recovery process has commenced within twelve (12) months after the filing of a Proof of Loss as stated in **SECTION VI. GENERAL CONDITIONS**, **H. Payment, Indemnity and Proof of Loss**.

*       *       *

**M.  Bankruptcy of Insured Person or Insured**

Bankruptcy or insolvency of any **Insured** or **Insured Person** shall not relieve the **Company** of any of its obligations under this Endorsement excess of the **Employed Lawyer** Retention and within the Limits of Liability.

**N.  Authorization**

The **Named Insured** is authorized to act on behalf of any **Insured** or **Insured Person** with respect to all matters under this Endorsement, including, but not limited to, giving and receiving notice and other communications, effecting or accepting any Endorsements or canceling the Policy, paying any premium or receiving any return premium under the Policy.

**O.  Changes to the Policy**

Notice to an agent or other person or knowledge possessed by same shall not effect a waiver or change to this Policy nor shall it estop the **Company** from asserting any rights under the Policy. The Policy shall only be changed by written Endorsement that shall form a part thereof.

*       *       *

**Q.  Representations and Severability**

The **Named Insured** represents that the statements contained in the insurance Application or Renewal Application and all materials submitted therewith are accurate and complete and are submitted on behalf of all interested parties under this Endorsement and Policy.  The **Named Insured** agrees that the **Company** has issued the Policy in reliance upon the truth of such representations.   With respect to the information set forth in the insurance Application or Renewal Application, only knowledge possessed by the chief executive officer, chief operating officer, chief financial officer, chief technology/privacy officer, president, partner, principal, risk manager, general counsel or other equivalent position thereof; or other person whose signature appears on the Application or Renewal Application, shall be imputed to the **Named Insured**.

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

All other Policy terms and Conditions remain unchanged.

IN WITNESS WHEREOF, the **Company** has caused this Endorsement to be countersigned by its Secretary at Hamilton, Bermuda.

Date: March 7, 2016                                  Mutual Insurance Company Limited

Lucia Kempe
Secretary

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

P.O. Box HM 3212, Hamilton HM NX, Bermuda
Swan Building, 1st Floor, 26 Victoria Street, Hamilton HM 12, Bermuda
Phone: 441-292-7633 ♦ Fax: 441-295-7562 ♦ Email: info@mic.bm ♦ www.mutualinsurance.bm

**ENDORSEMENT**     to be attached to and forming part of Certificate No.  0315-10073-15 of Global
Media Liability Policy 2.0 (Claims Made Form)

---

Endorsement No.:     7
Issued On:           March 7, 2016
Effective Date:      March 1, 2016
**Named Insured**:       Time Inc.

---

## GENERAL AMENDATORY COVERAGE ENDORSEMENT
READ THE ENTIRE POLICY CAREFULLY TO DETERMINE
YOUR RIGHTS AND RESPONSIBILITIES.

The **Named Insured** and the **Company** agree that Certificate No. 0315-10073-15 of Global Media
Liability Policy 2.0 is amended to include Information Security and Privacy Coverage as outlined under
the attached coverage document, identified as:

Beazley Information Security and Privacy Declarations
Beazley InfoSec policy form F00419SL 052014 with applicable endorsements

**Policy and Endorsements Effective At Renewal:**

Policy Form: F00419SL 052014 ed.
1.  NMA 1256 Nuclear Incident Exclusion
2.  NMA 1477 Radioactive Contamination Exclusion
3.  E0284 032011 Sanction Limitation and Exclusion Clause
4.  E05956 022015 Cyber Extortion Endorsement
5.  E03822 032013 Amend Notice of Claim Endorsement
6.  E06728 092014 Amend Cancellation Endorsement
7.  E01280 062009 Delete Insuring Agreement 1.D Endorsement
8.  E06214 092014 First Party Data Protection Endorsement
9.  Defense and Settlement of Claims II.C.2 Hammer Clause amended to 70/30
10. XBVIII Cancellation B. amended to limit to underwriter cancellation for non-payment of premium only

All other Policy terms and Conditions remain unchanged.

IN WITNESS WHEREOF, the **Company** has caused this Endorsement to be countersigned by its
Secretary at Hamilton, Bermuda.

Date: March 7, 2016                          Mutual Insurance Company Limited

Lucia Kempe
Secretary

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

P.O. Box HM 3212, Hamilton HM NX, Bermuda
Swan Building, 1st Floor, 26 Victoria Street, Hamilton HM 12, Bermuda
Phone: 441-292-7633 ♦ Fax: 441-295-7562 ♦ Email: info@mic.bm ♦ www.mutualinsurance.bm

**ENDORSEMENT**   to be attached to and forming part of Certificate No.  0315-10073-15 of Global Media Liability Policy 2.0 (Claims Made Form)

---

Endorsement No.:   8
Issued On:   March 7, 2016
Effective Date:   March 1, 2016
**Named Insured**:   Time Inc.

---

## GENERAL AMENDATORY COVERAGE ENDORSEMENT

READ THE ENTIRE POLICY CAREFULLY TO DETERMINE
YOUR RIGHTS AND RESPONSIBILITIES.

The **Named Insured** and the **Company** agree that **SECTION VI. GENERAL CONDITIONS**, **L. Cancellation and Nonrenewal**, **2.**, is amended as follows:

**2.** The Policy shall not be cancelled by the **Company**, except for nonpayment of premium. The **Company** shall provide the **Named Insured** written notice, not less than thirty (30) days thereafter, when such cancellation shall become effective.  This Condition shall neither waive nor prejudice the **Company's** right to rescind the Policy in the event of any material misrepresentation made by the **Insured** in the Application.

All other Policy terms and Conditions remain unchanged.

IN WITNESS WHEREOF, the **Company** has caused this Endorsement to be countersigned by its Secretary at Hamilton, Bermuda.

Date: March 7, 2016                           Mutual Insurance Company Limited

Lucia Kempe
Secretary

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

P.O. Box HM 3212, Hamilton HM NX, Bermuda
Swan Building, 1st Floor, 26 Victoria Street, Hamilton HM 12, Bermuda
Phone: 441-292-7633 ♦ Fax: 441-295-7562 ♦ Email: info@mic.bm ♦ www.mutualinsurance.bm

### NOTICE TO THE INSURED

**THIS IS AN INDEMNITY POLICY.  THE COMPANY DOES NOT HAVE A DUTY TO DEFEND ANY CLAIM AGAINST THE INSURED.  DEFENSE EXPENSE SHALL APPLY TO THE INSURED'S RETENTION AND LIMITS OF LIABILITY.  THIS IS A CLAIMS MADE POLICY.  EXCEPT AS MAY BE PROVIDED FOR IN THE POLICY, COVERAGE IS LIMITED TO LIABILITY FOR CLAIMS FIRST MADE AGAINST THE INSURED DURING THE PERIOD OF INSURANCE OR, IF APPLICABLE, ANY DISCOVERY PERIOD.  VARIOUS PROVISIONS IN THE POLICY RESTRICT COVERAGE. READ THE ENTIRE POLICY CAREFULLY TO DETERMINE YOUR RIGHTS AND RESPONSIBILITIES.**

Words and phrases, other than captions, printed in boldface are defined in **SECTION IV. DEFINITIONS**.

In consideration of the payment of premium and in reliance upon the representations contained in the Application, and subject to the Limits of Liability, conditions and all other Policy terms, the **Company** and the **Named Insured**, on behalf of all **Insureds**, agree as follows:

## SECTION I.  INDEMNITY AGREEMENT

### A.  Media Liability Agreement

The **Company** shall indemnify the **Insured** for **Loss** and **Defense Expense** in excess of the Retention and within the applicable Limit of Liability because of liability imposed by law or **Assumed Under Contract** as a result of any **Claim** arising out of an **Event** committed by or on behalf of the **Insured** between the **Retroactive Date** and the end of the **Period of Insurance**, and in or for **Material** in connection with **Covered Media** and arising from one or more of the following:

1. libel, criminal libel, slander, product or personal disparagement, trade libel or other forms of defamation or tort relating thereto;

2. intentional or negligent infliction of emotional distress or outrageous conduct;

3. invasion or infringement of, or interference with, the right of privacy or publicity, including but not limited to intrusion upon seclusion, public disclosure of private facts, unwarranted or wrongful publicity, false light invasion of privacy or commercial appropriation of name, likeness or persona;

4. infringement of copyright or any plagiarism; violation of moral rights (droit moral), artist's rights or neighboring rights; failure to provide or give appropriate credit, acknowledgment or attribution for third party **Material**; passing off, **Piracy**, misappropriation of ideas under implied contract or other misappropriation of intellectual property rights, ideas or information;

5. infringement of title, slogan, logo, trademark, trade name, trade dress, service mark or service name, including infringement arising from domain names and the use of meta tags;

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

6. **Unfair Competition**, deceptive trade or unfair business practices, consumer protection act violations, civil actions for fraud, or false and deceptive **Advertising**, but only when such perils are alleged with and arise from the same factual basis as a **Claim** asserted in one or more of subparts **1. – 5.** above;

7. inadvertent breach of a license agreement with respect to **Material** in **Covered Media**, but only when alleged with and arising from the same factual basis as a **Claim** asserted in one or more of subparts **4.** or **5.** above;

8. breach of contract, promissory estoppel or misrepresentation arising from:

   a. an alleged breach of promise to maintain the anonymity of a confidential or private source or the **Material** provided by such source or from the failure to portray the source in a particular manner; or

   b. an alleged breach of promise, commitment or undertaking to a third party regarding **Material** or contemplated **Material**, including an agreement to publish or refrain from publishing certain **Material** or the failure to portray a subject in a particular manner, but excluding any **Claim** to the extent alleging that money would be paid to the third party in consideration for a commitment or undertaking;

9. false arrest, detention, imprisonment, abuse of process or malicious prosecution;

10. invasion of the right of private occupancy, including wrongful entry or eviction, trespass by any individual or any manned or unmanned aircraft, eavesdropping or violation of state consent statutes or similar law, act or regulation relating to the recording of communications wherein the **Insured** is a party; provided, any nonconsensual or surreptitious recording of telephone or mobile communications by or on behalf of the **Insured** is subject to coverage, but only if such recording is supported by advice or opinion from legal counsel that such conduct is lawful;

11. harassment or stalking relating to the gathering of **Material**;

12. negligence, including any actual or alleged error, omission, misstatement, or misleading statement of the **Insured**, but only in **Material** disseminated by or which should have been disseminated by the **Insured**, including but not limited to any **Claim** alleging harm to any person or entity who has acted or failed to act in reliance upon the content of such **Material**;

13. public disclosure of trade secrets or any other confidential, third-party business or commercial matter, but only when disclosed in **Material**;

14. discrimination or other civil rights violations, including but not limited to violation of a claimant's Fourth Amendment rights against unreasonable searches and seizures arising out of the gathering of **Material**;

15. prima facie tort, but only when alleged with and arising out of the same factual basis as a **Claim** asserted in one or more of subparts **1. – 14.** above;

16. conspiracy, but only when alleged with and arising out of the same factual basis as a **Claim** asserted in one or more of subparts **1. – 15.** above;

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

17. breach of any indemnification or hold harmless agreement, but only when alleged with and arising out of the same factual basis as a **Claim** asserted in one or more of subparts **1. – 16.** above;

18. negligent or intentional interference with any contractual, economic or business relationships, but only when alleged with and arising out of the same factual basis as a **Claim** asserted in one or more of subparts **1. – 17.** above;

19. negligent supervision or training of an employee, but only when alleged with and arising out of the same factual basis as a **Claim** asserted in one or more of subparts **1. – 18.** above;

and which **Claim** shall have been first made against the **Insured**, in writing, during the **Period of Insurance** or any Discovery Period.

## SECTION II.  MEDIA SUPPLEMENTAL PAYMENTS AGREEMENTS

Media Supplemental Payments shall be paid in addition to the Limit of Liability set forth in Item **4.** of the Declarations and shall be subject to separate Sub-Limits of Liability and Retention obligations, as set forth in Item **5.** of the Declarations, unless otherwise specified.  A co-insurance requirement, wherein a percentage in excess of the Retention is paid by the **Named Insured**, may also apply and shall be set forth in the Declarations.

As a condition to coverage hereunder, the **Insured** must promptly notify the **Company** by any expedient means of the circumstance, proceeding, act or **Event** giving rise to coverage under these supplemental coverage parts.

All Policy terms, conditions and Exclusions shall apply to the **SECTION II. MEDIA SUPPLEMENTAL PAYMENTS AGREEMENTS**.

### A.  Legal Expense Agreements

If there are circumstances, proceedings, acts, **Events** or **Related Events** giving to rise to coverage under one or more the Media Supplemental Legal Expense Agreements, only one such Agreement shall apply and shall be the Agreement that is most favorable to the **Insured**. In addition, any repetitions of any circumstances, proceedings, acts, **Events** or **Related Events** giving rise to coverage under a Media Supplemental Legal Expense Agreement shall be considered a single circumstance, proceeding, act or **Event** for which one Sub-Limit of Liability and one Retention shall apply.

The Media Supplemental Legal Expense Agreements do not include expenses, salaries or other compensation of the **Insured's** employees, except as provided in **SECTION II. MEDIA SUPPLEMENTAL PAYMENTS AGREEMENTS**, **C. Witness Expense**.

### 1.  Criminal Legal Expense

The **Company** shall indemnify the **Insured** for **Criminal Legal Expense** incurred by the **Insured** in defending a **Criminal Prosecution**, provided that:

    a.  the **Criminal Prosecution** arises from an **Event** committed by the **Insured** and in connection with **Covered Media**; and

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

    **b.** the **Criminal Prosecution** is commenced during the **Period of Insurance**.

Multiple **Criminal Prosecutions** arising from the same **Event** or **Related Events** shall relate back to the **Criminal Legal Expense** Retention and Limits of Liability in effect at the time when the **Criminal Prosecution** was first commenced.

For purposes of this supplemental coverage part, the following Definitions shall apply:

    **Criminal Legal Expense** means:

        **i.** reasonable legal fees and other necessary expenses incurred in the investigation, defense, or appeal of a **Criminal Prosecution**; or

        **ii.** premiums for bail bonds, appeal bonds and bonds related to a **Criminal Prosecution** within the applicable Limits of Liability stated in this Endorsement, although the **Company** is not responsible for procuring such bonds.

    **Criminal Prosecution** means:

    The detention or arrest of an **Insured** by any law enforcement officer or the filing of charges against an **Insured** by any prosecutor in a criminal court for violation of a criminal ordinance, regulation or statute, whether federal, state or local, and relating to:

        **i.** obstruction of justice or resisting arrest at or near the place and time of the gathering of **Material**; or

        **ii.** breach of time, place or manner restrictions, including but not limited to trespass, curfews or law enforcement cordons, committed in the gathering or dissemination of **Material**.

**2. First Amendment Protection Legal Expense**

The **Company** shall indemnify the **Insured** for **First Amendment Legal Expense** incurred by the **Insured** in response to an interference of the **Insured's** First Amendment rights by a governmental entity or a third party if:

    **a.** the First Amendment interference arises from an **Event** committed by the **Insured** and in connection with **Covered Media**; and

    **b.** the proceeding giving rise to the **First Amendment Legal Expense** is commenced during the **Period of Insurance**.

The **First Amendment Legal Expense** Limits of Liability and **First Amendment Legal Expense** Retention in effect when the proceeding giving rise to the **First Amendment Legal Expense** was first commenced shall apply.

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

**3. Subpoena Legal Expense**

The **Company** shall indemnify the **Insured** for **Subpoena Legal Expense** incurred by the **Insured** in responding to a subpoena if:

  **a.** the subpoena seeks **Material** or testimony arising out of an **Event** committed by the **Insured** and in connection with **Covered Media**;

  **b.** the **Insured** is not a party to the legal proceeding in which the subpoena has been issued; and

  **c.** the subpoena is served within the **Period of Insurance**.

Multiple subpoenas arising from the same **Event** or **Related Events** shall relate back to the **Subpoena Legal Expense** Retention and **Subpoena Legal Expense** Limits of Liability in effect at the time when the subpoena was first served upon the **Insured**.

The **Subpoena Legal Expense** Agreement shall not apply to any actions or orders by any federal, state or local regulatory or administrative entity.

**4. Contempt Legal Expense**

The **Company** shall indemnify the **Insured** for expense incurred in defense of a contempt proceeding arising from:

  **a.** the **Insured's** failure or refusal to comply with a court order mandating testimony, disclosure of a confidential source or the production of **Material**;

  **b.** the **Insured's** inadvertent violation of a sealed, gag or suppression order issued by a court restricting the public dissemination of content; or

  **c.** the **Insured's** intentional violation of a sealed, gag or suppression order issued by a court restricting the public dissemination of content, but only after advice or opinion by the **Insured's** legal counsel that such order violated the First Amendment to the United States Constitution or similar State constitution protecting freedom of speech and press;

provided, Contempt Legal Expense shall not include any contempt proceeding arising from verbal abuse, disruption, failure to appear or other disrespectful conduct toward the tribunal by the **Insured**.

Additionally, for Contempt Legal Expense to apply:

  **d.** the contempt proceeding arises from an **Event** committed by the **Insured** and in connection with **Covered Media**;

  **e.** the contempt proceeding commences during the **Period of Insurance**;

  **f.** the **Insured** is not a party in the underlying legal action; and

  **g.** a contempt proceeding shall not be considered a **Claim** under the Policy.

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

Multiple contempt proceedings arising from the same **Event** or **Related Events** shall relate back to the Contempt Legal Expense Retention and Contempt Legal Expense Limits of Liability in effect at the time when the contempt proceeding was first commenced.

The Contempt Legal Expense Agreement shall not apply to any actions commenced by any federal, state or local regulatory or administrative entity.

## B. Supplemental Fines and Penalties Agreement

### 1. Contempt of Court Fines and Penalties

The **Company** shall indemnify the **Insured** for fines or penalties imposed by a court, provided that the proceeding giving rise to the fines or penalties was first commenced during the **Period of Insurance**. Additionally, the fines and penalties shall arise from:

**a.** the **Insured's** failure or refusal to comply with a court order mandating the **Insured's** appearance, the disclosure of a confidential source or the production of **Material**;

**b.** the **Insured's** violation of a restraining order relating to the gathering of **Material**;

**c.** the **Insured's** inadvertent breach or violation of a sealed, gag or suppression order restricting the public dissemination of **Material**; or

**d.** the **Insured's** intentional breach or violation of a sealed, gag or suppression order restricting the public dissemination of **Material**, but only after advice or opinion by the **Insured's** legal counsel that such order violates the First Amendment to the United States Constitution or similar State constitution protecting freedom of speech and press;

provided, Contempt of Court Fines and Penalties shall not include fines or penalties arising from verbal abuse, disruption, failure to appear or other disrespectful conduct toward the tribunal by the **Insured**, nor shall such fines or penalties be considered **Loss** under the Policy.

## C. Witness Expense

The **Company** shall indemnify the **Insured** up to two hundred fifty dollars ($250) per **Insured's** employee for each day that the employee is required to appear at a trial, deposition, hearing or alternative dispute resolution proceeding attributable to a covered **Claim** or a circumstance or act covered under **SECTION II. MEDIA SUPPLEMENTAL PAYMENTS AGREEMENTS**. A five thousand dollar ($5,000) Witness Expense Limit of Liability aggregate shall apply to each such **Event**. The Witness Expense Limit of Liability shall be paid in addition to the Limit of Liability stated in Item **4.** of the Declarations and shall not be subject to the Retention stated in Item **4.** of the Declarations.

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

**SECTION III.  RETENTION, LIMITS OF LIABILITY, DATE OF CLAIMS MADE, EVENTS AND RELATED EVENTS, DISCOVERY PERIOD**

### A.  Retention

The Retention is the dollar amount stated in the Declarations or by Endorsement and for which the **Insured** is responsible to pay for any combination of **Loss** or **Defense Expense** before the **Company** is obligated to indemnify the **Insured** for any subsequent expenditures.  The Retention shall apply to each **Event** or **Related Event**, but shall not reduce any Limits of Liability.  If an **Event** involves two or more **Covered Media** each with different Retentions, only one Retention shall apply, which shall be the highest Retention and applicable to all involved **Covered Media**.

### B.  Limits of Liability

The Limits of Liability are the maximum dollar amounts that will be reimbursed by the **Company** for any combination of **Loss** or **Defense Expense** arising out of an **Event** or **Related Event** in excess of the **Insured's** Retention.  The Limits of Liability apply regardless of the number of (i) **Insureds** under the Policy, (ii) **Covered Media**, (iii) persons or entities sustaining **Loss**, (iv) Indemnity Agreements, (v) **Events** or **Related Events**, or (vi) **Claims**.  The Limits of Liability available to indemnify the **Insured** for **Loss** or **Defense Expense** shall not exceed any amounts stated in the Declarations, or in any Endorsement, applicable to each **Event** or **Related Event**.

If any Limit of Liability is exhausted by the payment of **Loss** or **Defense Expense** with respect to any **Event**, all obligations of the **Company** with respect to the type of coverage subject to that Limit of Liability shall be completely fulfilled.

### C.  Date of Claims Made

A **Claim** shall be considered as being first made against the **Insured** at the earlier of the following times:

1.  when written **Claim** is first made against the **Insured** seeking **Loss**, equitable relief or other enforcement of a legal right; or

2.  when written notice is first tendered to the **Company**, by or on behalf of the **Insured**, of specific circumstances involving an **Event**, which may result in a **Claim** for **Loss**, equitable relief or other enforcement of a legal right.

If more than one **Claim** is made, which arises out of the same **Event**, all subsequent **Claims** shall be deemed to have been made at the time the first of such **Claim** is made against the **Insured**.

### D.  Date of Events and Related Events

1.  All **Related Events** shall be deemed one **Event** that happened on the date of the first dissemination or utterance of **Material**; or, if there is no dissemination or utterance, on the first date of the activity giving rise to a **Claim**.

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

2. If an **Event** first happened or is deemed to have first happened prior to the **Retroactive Date**, the **Company** shall only be liable for that portion of **Loss** or **Defense Expense** fairly attributable to such **Event** happening after the **Retroactive Date** and within the **Period of Insurance**.

3. **Related Events** shall not create any obligations by the **Company** under more than one Policy issued by the **Company**.

4. If any **Event** or **Related Event** is covered under the **SECTION I. INDEMNITY AGREEMENT, A. Media Liability Agreement** (and the **Covered Professional Services Liability Agreement**, if so endorsed to the Policy), only one Indemnity Agreement shall apply.  If the Limits of Liability applicable to the Indemnity Agreements are not the same, the Limit of Liability most favorable to the **Insured** shall apply to the **Event** or **Related Event**.

## E.  Discovery Period

If the Policy is cancelled by the **Company** other than for non-payment of the premium, or if the **Company** or the **Named Insured** do not renew the Policy for any reason, the **Named Insured** shall have the right to purchase a Discovery Period in which a **Claim** may be made against the **Insured** for a further period of thirty-six (36) months following the termination of the Policy, subject to the following:

1. the **Named Insured** makes a written request for the Discovery Period, which is received by the **Company** within sixty (60) days after the date the Policy is terminated, with payment of an additional premium calculated at 100% of the last annual premium.  The Discovery Period will not take effect until the additional premium is paid.  Once effective, this extension shall not be cancelled by the **Company**;

2. the Discovery Period applies only to **Claims** first made during the Discovery Period based solely on any **Event** committed or alleged to have been committed between the **Retroactive Date** and the end of the **Period of Insurance**; and

3. the purchase of the Discovery Period shall not increase the (applicable) Limits of Liability stated in the Declarations.

If the **Named Insured** divests, ceases operation of or otherwise chooses to remove **Covered Media** from the Policy, the above provisions shall apply, but only with respect to the removed **Covered Media**.

## SECTION IV.  DEFINITIONS

When used in the Policy:

## A.  Additional Insured means:

1. any individual or entity added to the Policy as an **Additional Insured** by Endorsement or certificate of insurance; or

2. any individual or entity the **Named Insured** agrees to name as an **Additional Insured** in writing prior to **Loss**;

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

but only if the **Insured** provided **Material** or services to the **Additional Insured**, and if the liability of the **Additional Insured** was vicariously caused by the **Insured** and not directly caused.

B. **Advertising**, regardless of its form or the name it is given, means publicity, press releases, commercials, advertorials, native ads, sponsor content and promotional **Material** of any kind that is disseminated to the public by or on behalf of the **Insured** in connection with **Covered Media**, or **Advertising** of a third party uttered or disseminated in **Covered Media**. **Advertising** shall not include:

    **1.** one-on-one communications, whether spoken or written;

    **2.** internal presentations and communications to focus groups or **Insureds**; or

    **3.** any other **Material** that has not been disseminated to the public.

C. **Assumed Under Contract** means liability assumed by the **Insured** in any hold harmless or indemnity agreement or provision, but only with respect to **Material** and for the types of **Claims** covered in the Policy.

D. **Bodily Injury** means physical injury, illness or disease sustained by a person, including death.

E. **Claim** means:

    **1.** any initiation of a legal proceeding against the **Insured**, even if groundless, false or fraudulent, seeking to hold the **Insured** responsible for **Loss**, seeking equitable relief or other legal right, or seeking pre-litigation discovery;

    **2.** any written demand or other notice, even if groundless, false or fraudulent, seeking to hold the **Insured** responsible for **Loss**, seeking equitable relief or other legal right, or seeking pre-litigation discovery;

    **3.** any alternative dispute resolution proceeding;

    **4.** any demand for a retraction or correction;

    **5.** any request to toll or waive a statute of limitations; or

    **6.** any prosecution for criminal libel.

**Claim** does not include any other investigation or assertion of a legal right by a national, state or local administrative or regulatory agency nor does this Definition apply to **SECTION II. MEDIA SUPPLEMENTAL PAYMENTS AGREEMENTS**.

F. **Collaborative Reporting Agreement** means agreements with third party newsgathering entities to share reporting resources on a single project or series of projects, irrespective of whether the collaborative content is distributed in **Covered Media**.

G. **Company** means Mutual Insurance Company Limited.

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

**H. Covered Media** means:

   **1.** the media-related entities or operations of the **Named Insured**, stated in Item **3.** of the Declarations or by Endorsement; or

   **2.** any entity that meets the requirements of **SECTION VI. GENERAL CONDITIONS, F. Changes in Covered Media**.

**I. Defense Expense** means:

   **1.** reasonable legal fees and other necessary expenses incurred in the investigation, defense, negotiation, adjustment, alternative dispute proceeding, settlement or appeal of a **Claim**;

   **2.** reasonable and necessary legal fees and other expenses incurred by the **Insured** to commence a declaratory action, provided that:

      **a.** the **Insured** is aware of a potential **Claim**;

      **b.** the potential **Claim** is subject to coverage under the Policy;

      **c.** defense counsel has recommended the commencement of the declaratory action as a defensive strategy in response to the potential **Claim**; and

      **d.** the **Company** approves the declaratory action prior to its commencement; or

   **3.** premiums on appeal bonds and bonds to release attachments relatable to that portion of the bond within the applicable Limit of Liability stated in the Declarations or by Endorsement, although the **Company** is not responsible for procuring such bonds.

**Defense Expense** does not include expenses, salaries or other compensation of the **Insured's** employees, except as provided in **SECTION II. MEDIA SUPPLEMENTAL PAYMENTS AGREEMENTS, C. Witness Expense**.

**J. Event** means:

   **1.** the gathering, creation, researching, acquiring, selecting, compiling or production of **Material**;

   **2.** any utterance or dissemination of **Material** in any medium, including but not limited to publication, broadcast, cablecast, and any online, electronic, audio, video, audiovisual, optical or digital media;

   **3.** Internet social or professional networking **Material** published on any third party network, website or other media by or on behalf of the **Insured**;

   **4.** any alteration or enhancement of **Material**;

   **5.** any decision to refrain from disseminating third party **Material**;

   **6. Advertising**;

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

7.  any **Public Appearance**;

8.  **Merchandising**;

9.  the use of **Material** by others, with or without the consent of the **Insured**;

10. the syndication, serialization, lease, licensing or other grant of exclusive or non-exclusive rights in **Material** to third parties;

11. participation in **Collaborative Reporting Agreements**; or

12. **Related Events**.

K. **First Amendment Legal Expense** means reasonable legal fees and other professional fees incurred by the **Insured** during the **Period of Insurance** in response to an interference of the **Insured's** First Amendment rights for the following:

1.  prior restraint of the **Insured's** ability to gather or disseminate **Material**, including any judicially imposed prior restraint commenced by private litigants; or

2.  any search and seizure of the **Insured's** property or premises with respect to **Material** gathered for **Covered Media**.

**First Amendment Legal Expense** shall not include:

3.  any fees incurred by the **Insured** under any state or federal Freedom of Information Act, nor shall it include any other action commenced by the **Insured** seeking access to people, places or documents under any statute, law or regulation;

4.  any action, ruling or order by the Federal Trade Commission or any similar state entity;

5.  any action, ruling or order by the Federal Communications Commission relating to ownership or licensing; or

6.  any fees incurred by the **Insured** in response to laws or regulations of general application.

L. **Insured** means:

1.  the **Named Insured** or any **Subsidiary**, now existing or hereafter created, or any present or former shareholder, director, officer, trustee, partner, member or employee, but only while acting within the scope of their duties as such at the time of the **Event** giving rise to the **Claim**;

2.  the estate, heirs, administrators, executors or legal representatives of the **Insured** in the event of the death, incapacity, insolvency or bankruptcy of the **Insured**, but only if the **Claim** would have been covered against the **Insured**;

3.  the **Insured's** spouse, civil union partner or domestic partner, but only if the **Claim** arises from or out of the individual's relationship as such or from the individual's ownership interest

## MUTUAL INSURANCE COMPANY LIMITED
### GLOBAL MEDIA LIABILITY POLICY 2.0
#### (CLAIMS MADE FORM)

in the **Covered Media**, and only if the **Claim** would have been covered against the **Insured**;

4. at the sole discretion of the **Named Insured**, which may be exercised before or after any **Event** or **Claim**, any agent, representative, volunteer, leased or temporary employee, third party licensee or sub-licensee, third party distributor or independent contractor of the **Insured**, including but not limited to any distributor, author, advertiser, advertising agency, blogger, printer, correspondent, photographer, videographer, stringer or freelance writer, but only with respect to **Material** or services provided by such individual or entity for **Covered Media**;

5. any third party whose liability is **Assumed Under Contract**;

6. any joint venture, limited partnership, limited liability company or other entity in which the **Named Insured** or any **Subsidiary** has a financial or ownership interest, but only to the extent of the **Insured's** interest in the joint venture, limited partnership, limited liability company or other entity; or

7. any **Additional Insured**.

M. **Loss** means all forms of monetary judgment, award or settlement, including any actual, statutory, compensatory, punitive, multiplied or exemplary damages; pre-judgment and post-judgment interest on any portion of a judgment; and court costs, fees and expenses awarded to prevailing third parties.  Coverage for punitive damages is unequivocal.  The **Company** shall not raise the uninsurability of punitive damages as a coverage defense.

**Loss** shall not include:

1. taxes, civil or criminal fines, sanctions or penalties;

2. production costs or other overhead, restitution, unjust enrichment, disgorgement of profits, royalties, license payments or commissions, regardless of how any of the foregoing are plead or characterized;

3. costs to recall, reproduce, correct, redistribute or reprint **Material**; or

4. costs to comply with an injunction.

N. **Material** means any content or communication in connection with **Covered Media**, regardless of the form, format, nature or medium by which it is disseminated.

O. **Merchandising** means:

1. the use of any logo, symbol, trademark or other intellectual property owned by the **Insured** or licensed to the **Insured** from a third party and used in connection with products or services that promote **Covered Media**; or

2. the licensing to any third party of any logo, symbol, trademark or other intellectual property owned or licensed by the **Insured** for use in connection with the sale of third party products or services.

P. **Named Insured** means the person or entity stated in Item **1.** of the Declarations.

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

**Q. Period of Insurance** means the period from the effective date to the expiration date as stated in Item **7.** of the Declarations, or its earlier cancellation or termination, if any.

**R. Personally Identifiable Information** means:

    **1.** information concerning the individual that constitutes "nonpublic personal information" as defined in the Gramm-Leach Bliley Act of 1999, as amended, and regulations issued pursuant to the Act;

    **2.** medical or heath care information concerning the individual, including but not limited to "protected health information" as defined in the Health Insurance Portability and Accountability Act of 1996, as amended, and the Health Information Technology for Economic and Clinical Health Act of 2009, as amended, and regulations issued pursuant to the Acts;

    **3.** information concerning the individual that is defined as "private personal information" under statutes enacted to protect such information in the several American states or foreign countries for **Claims** subject to the laws of such jurisdictions;

    **4.** information concerning an individual that is defined as private personal information under a Breach Notice Law; or

    **5.** the individual's drivers license or state identification number; social security number; unpublished telephone number; and credit, debit or other financial account numbers in combination with associated security codes, access codes, passwords or pins; if such information allows an individual to be uniquely and reliably identified or contacted or allows access to the individual's financial account or medical record information, but does not include publicly available information that is lawfully made available to the general public from government records.

**S. Piracy** means the unauthorized use or reproduction of copyrighted **Material**.

**T. Pollutants** means any substance as defined on any list of hazardous substances issued by the United States Environmental Protection Agency or Canadian Environmental Protection Act or any federal, state, local, municipal, county, regional, provincial or foreign counterpart. **Pollutants** also means, without limitation, any solid, liquid, gaseous, thermal or electromagnetic irritant or contaminant, including vapor, smoke, soot, fumes, acids, alkalis, chemicals or waste (including those that are recycled, reclaimed or reconditioned), as well as any air emission, odor, wastewater, oil or oil products, infectious or medical waste, asbestos or asbestos products.

**U. Professional Services** means services provided to third parties.

**V. Property Damage** means:

    **1.** physical injury to tangible or intangible property, including its loss of use or destruction; or

    **2.** loss of use of tangible or intangible property that has not been physically injured, lost or destroyed.

## MUTUAL INSURANCE COMPANY LIMITED
### GLOBAL MEDIA LIABILITY POLICY 2.0
#### (CLAIMS MADE FORM)

W. **Public Appearance** means speaking in public, including presentations, panel discussions, speeches, press conferences and interviews by the **Insured**, or any guest appearances by the **Insured** on media entities owned by third parties, including but not limited to radio, television, cable or Internet appearances, but only with respect to a **Public Appearance** taking place within the scope and course of the **Insured's** employment or any contractual agreement, and relating to **Covered Media**.

X. **Related Event** means the repetition of the same or similar infringing or offending **Material**, regardless of the number of versions or forms, relating to the same subject, person or persons.

Y. **Retroactive Date** means the date stated in Item **8.** of the Declarations or by Endorsement identifying the date after which an **Event** by **Covered Media** may occur and be subject to coverage under the Policy.

Z. **Subpoena Legal Expense** means reasonable legal and other professional fees to resist or respond to a subpoena seeking testimony or **Material** from the **Insured**.

AA. **Subsidiary** means any entity that is at least fifty percent (50%) owned or is managed or controlled by the **Named Insured** either directly or through one or more of its **Subsidiaries**.

BB. **Unfair Competition** means the misuse, injury to or misappropriation of an intellectual property right in **Material** or any injury to goodwill or reputation.

## SECTION V.  EXCLUSIONS

The **Company** shall not be obligated to indemnify the **Insured** for any Media Supplemental Payment set forth in **SECTION II. MEDIA SUPPLEMENTAL PAYMENTS AGREEMENTS** or **Loss** or **Defense Expense** arising from any **Claim**:

A. for or arising out of any actual or alleged violation of any law, order, regulation or act relating to:

   1. antitrust, price fixing, price discrimination, racketeering, restraint of trade, monopolization, or any unfair business practice or conspiracy related thereto; or

   2. the offer, sale or purchase of securities or commodities;

B. for or arising out of any actual or alleged criminal, fraudulent or dishonest conduct that shall have been deemed as such by judge, jury or admission; provided, this Exclusion shall not apply to:

   1. any **Insured**, who is a natural person, and who did not participate in or ratify the criminal, fraudulent or dishonest conduct;

   2. prosecution under a criminal defamation statute as set forth in **SECTION I. INDEMNITY AGREEMENT, A. Media Liability Agreement, 1.** or for **Criminal Legal Expense** incurred under **SECTION II. MEDIA SUPPLEMENTAL PAYMENTS AGREEMENTS, A. Legal Expense Agreements, 1. Criminal Legal Expense**;

   3. any **Event** involving any actual or alleged criminal, fraudulent or dishonest conduct committed by the **Insured** after an evaluation or opinion by legal counsel that the criminal

## MUTUAL INSURANCE COMPANY LIMITED
### GLOBAL MEDIA LIABILITY POLICY 2.0
#### (CLAIMS MADE FORM)

statute violated the First Amendment to the United States Constitution or similar State constitution protecting freedom of speech and press.

Only knowledge possessed by or conduct of the chief executive officer, chief operating officer, chief financial officer, chief technology officer, president, general counsel, publisher, editor, risk manager, partner, member or principal, or any equivalent management position shall be imputed to the **Insured**;

C.  brought by any **Subsidiary**, joint venture or **Additional Insured** or any individual or entity whose liability has been **Assumed Under Contract**, or any **Claim** made by a current or former shareholder, director, officer, trustee, partner, member, employee, employment applicant or by a spouse, civil union partner, domestic partner, heir, executor, administrator or legal representative; provided, this Exclusion shall not apply if the **Claim** arises directly from the content of **Material** uttered or disseminated in **Covered Media**;

D.  for or arising out of any actual or alleged **Bodily Injury** or **Property Damage**; provided, this Exclusion shall not apply to **Bodily Injury** arising solely from a covered **Claim** for emotional distress under **SECTION I. INDEMNITY AGREEMENT, A. Media Liability Agreement**;

E.  for or arising out of any actual or alleged patent infringement or contributing to or inducement to infringe a patent or for theft or misappropriation of trade secrets; provided, the Exclusion for theft or misappropriation of trade secrets shall not apply to the public disclosure of trade secrets or other confidential corporate information as stated in **SECTION I. INDEMNITY AGREEMENT, A. Media Liability Agreement,13.**;

F.  for or arising out of any actual or alleged false, misleading, fraudulent or deceptive **Advertising**, but only with respect to the **Insured's** intentional conduct as to its own products or services, including the inflation of circulation figures;

G.  for or arising out of any actual or alleged breach of any express or implied contract or agreement, including but not limited to breach of any warranty or guarantee, breach of fiduciary relationships or any dispute over fees, credits, funds, billings or charges, including but not limited to the **Insured's** alleged failure to pay royalties, to make payments or to account for same; provided, the Exclusion for breach of any express or implied contract or agreement shall not apply to:

  1.  liability **Assumed Under Contract** or any liability that would attach absent any agreement or contract, but only for the types of **Claims** covered under **SECTION I. INDEMNITY AGREEMENT, A. Media Liability Agreement** or by Endorsement;

  2.  any **Claim** covered under **SECTION I. INDEMNITY AGREEMENT, A. Media Liability Agreement, 4.**, for failing to provide appropriate credit, acknowledgment or attribution for third party **Material**; or

  3.  any **Claim** covered under **SECTION I. INDEMNITY AGREEMENT, A. Media Liability Agreement, 7. or 8.**;

H.  for or arising out of any actual or alleged violation of the Can-Spam Act, Telephone Consumer Protection Act, or Fair Credit Reporting Act, including any similar law, order, regulation or act, including any foreign equivalent, regulating the dissemination of communications to third parties,

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

including but not limited to faxes, text messages, email, telephone or mobile communications;

I.  made by any music licensing entity, including but not limited to ASCAP, SESAC, BMI or the RIAA, on their behalf or for others arising from the **Insured's** failure to procure or renew licenses, pay royalties or to account for same;

J.  for or arising out of any actual or alleged:

1.  unauthorized access, exceeding authorized access or wrongful access by false pretense or misrepresentation to any website, data, software, computing device, computer network or system, communications or Internet system or service by the **Insured** or anyone acting on behalf of the **Insured**;

2.  intentional or accidental disclosure, breach, loss, theft, misappropriation or sale of first or third party online or offline corporate information or **Personally Identifiable Information** in the care, custody or control of the **Insured**; provided, this Exclusion shall not apply if a decision was made to gather or disclose confidential business or commercial information or **Personally Identifiable Information** for the purpose of reporting or disseminating in **Covered Media**;

3.  violation, omission or misrepresentation with respect to any Internet or online user agreement, including but not limited to the "terms of use" or "privacy policy," by the **Insured** or any third party acting on behalf of the **Insured** pertaining to the collection, storage, use, disclosure, sharing or sale of confidential corporate information or **Personally Identifiable Information** or violation of any law regarding same; provided, this Exclusion shall not apply if a decision was made to gather or disclose confidential business or commercial information or **Personally Identifiable Information** for the purpose of reporting or disseminating in **Covered Media**;

4.  violation of state, federal or foreign law by the **Insured** with respect to the collection, storage, use, disclosure, sharing or sale of confidential corporate information or **Personally Identifiable Information**; provided, this Exclusion shall not apply if a decision was made to gather or disclose confidential business or commercial information or **Personally Identifiable Information** for the purpose of reporting or disseminating in **Covered Media**;

5.  mechanical or electrical failure, outage, interruption or power surge, brownout or blackout, routine wear and tear, or other disruption or failure of any infrastructure service, network or utility supplied by a third party, including but not limited to power, water, gas, communications or connectivity;

6.  failure of software, hardware or other technology to operate as intended; or

7.  alteration of, failure of, or damage to any computer, computer program, computer database or computer system, including the infection of any of the foregoing with a computer virus;

K.  for or arising out of any **Event** or other act, error or omission, transaction, fact or circumstance that has been the subject of notice to an **Insured** relating to a **Claim** or potential **Claim**, or the subject of litigation or any investigation, including any administrative or regulatory action, prior to the earlier of the inception of the **Period of Insurance** or the applicable **Retroactive Date**;

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

**L.** for or arising out of any actual or alleged copyright infringement, breach of a license agreement or other infringement of an intellectual property right with respect to any software or hardware, including, but not limited to any computing device, data storage device, program, code, application, network or operating system;

**M.** for or arising from any actual or alleged failure to provide or perform **Professional Services**, unless such services are specifically endorsed to the Policy;

**N.** for or arising out of any actual or alleged **Bodily Injury** or **Property Damage** arising from the use or misuse of any product or any product liability, including but not limited to any actual or alleged malfunction or failure of any product to perform in any manner, or from any design, manufacturing or assembly defect, or from any error, omission or misstatement in any labeling, packaging or instructional **Material** or from any failure to warn or instruct;

**O.** for or arising out of any actual, alleged or threatened release, seepage, discharge, disposal or dispersal of, or any exposure to, **Pollutants** or the existence of **Pollutants** on any property, whether or not the presence or threat of **Pollutants** took place suddenly, accidentally, gradually or was intended or expected; or any request, order, directive or demand to clean up, remove, test, monitor, contain, treat, detoxify or neutralize **Pollutants** or any voluntary offer to do so; or any actual or alleged **Property Damage**, **Bodily Injury**, emotional distress or any financial loss arising from any of the foregoing;

**P.** for or arising out of coupons, special offers, prizes or vouchers, including but not limited to the redemption thereof, or from gaming, gambling, contests, sweepstakes or other games of chance, including but not limited to violation of or noncompliance with any law, act or regulation relating to any of the foregoing; or

**Q.** for or arising from ordinary and usual business operations, transactions or communications that do not involve the utterance, dissemination, gathering, acquisition, or obtaining of **Material**.

## SECTION VI.  GENERAL CONDITIONS

### A.  Insured's Duties – Defense of Claims

Immediately after becoming aware of a **Claim** that may be subject to coverage under the Policy or facts or circumstances that may give rise to such **Claim**, the **Named Insured** shall conduct an investigation and take steps that are reasonable and prudent to defend against such **Claim**.

#### 1.  Retraction or Correction

The **Named Insured** shall have the sole discretion whether to retract or correct **Material**.

#### 2.  Notice of Claim

The **Named Insured** shall promptly notify the **Company** of any potentially covered **Claim** under the Policy by any expedient means and utilize the "Mutual Claim Form" for such purpose.  Otherwise, notice shall include: (i) the name and address of any retained defense counsel, (ii) suit papers or other demand, (iii) relevant documents, (iv) the date that the **Event** took place, (v) a narrative of the **Event** giving rise to the **Claim**, including involved **Covered Media**, and (vi) the date the **Insured** received notice of the **Claim**.  Notice shall be

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

sent to:

Mutual Insurance Company Limited
Attention: Claims Administrator
P.O. Box HM 3212
Hamilton HM NX, Bermuda
Swan Building, 1st Floor
26 Victoria Street
Hamilton, HM 12, Bermuda
Phone:  441-292-7633
Fax:  441-295-7562
Email:  claims@mic.bm

**3. Retention of Counsel**

The **Named Insured** shall retain counsel, subject to the continuing approval of the **Company**, for the defense of any **Claim** and shall pay all **Defense Expense** promptly. Counsel shall be retained within the time frame necessary to respond to the **Claim** and shall serve proper notice of the **Insured's** appearance and pleadings within the requisite period.

**4. Conduct of Defense and Cooperation of the Insured**

**a.** With respect to any covered **Claim**, the **Insured** shall cooperate as follows:

    **i.** The **Insured** shall provide all information reasonably requested by the **Company**;

    **ii.** The **Insured** shall attend any proceeding recommended by defense counsel, including trial, and shall assist with discovery and procure necessary witnesses and documents;

    **iii.** No **Insured** shall make any admissions of liability, except as necessary for the retraction or correction of **Material**.

**b.** For **Claims** within the **Insured's** Retention, the **Company** shall not be obligated nor called upon by the **Named Insured** to assume the defense or settlement of any **Claim**. However, the **Insured** has a duty to keep the **Company** advised of the **Claim** and shall cooperate as follows:

    **i.** the **Insured** shall report on **Claims** that are not in suit at regular quarterly intervals. Reports shall include the status of the **Claim** and any relevant developments;

    **ii.** the **Insured** shall promptly report any **Claim** that has evolved into litigation and shall provide notification of any complaint along with any corresponding documents. **Claims** in suit should be reported quarterly.  Such reports will include information relevant to the defense, including without limitation, the factual background, the status of the litigation, the likelihood of the **Insured's** success or failure of defense, ongoing estimates of **Defense Expense**, offers of settlement, if any, and any other pertinent information; and

    **iii.** the **Insured** shall promptly report, in addition to quarterly reports, any material developments in the defense, such as rulings on important motions, mediation or

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

settlement conferences, trial settings and settlement offers, and shall promptly report any **Claim** that appears likely to exhaust the Retention.

c. For **Claims** excess the **Insured's** Retention, the **Company** shall not be obligated nor called upon by the **Named Insured** to assume the defense or any settlement.  The **Company** and the **Insured** shall cooperate and participate fully in the defense.  The **Named Insured** shall retain counsel as set forth in **SECTION VI. GENERAL CONDITIONS, A. Insured's Duties – Defense of Claims, 3. Retention of Counsel**. The **Insured** shall cooperate as follows:

   i. the **Company** shall have the right to associate with the **Insured** in the defense and control of the **Claim**.  Any expense incurred by the **Company** shall be paid by the **Company** and shall not erode the Limits of Liability;

   ii. if the **Company** becomes dissatisfied with defense counsel retained by the **Named Insured**, the **Company** shall recommend new counsel to be jointly agreed to and approved by the **Named Insured** and the **Company** to take over the defense of the **Claim**.  Any recommendation of qualified defense counsel shall not be unreasonably denied by the **Named Insured**;

   iii. unless otherwise agreed, the **Insured** shall report on the status of **Claims** quarterly, with such reports to include information relevant to the defense, including without limitation, the factual background, the status of the litigation, an ongoing legal evaluation of the merits of the **Claim** and the likely outcome of the defense, ongoing estimates of **Defense Expense**, offers of settlement, if any, and any other pertinent information;

   iv. the **Insured** shall promptly report, in addition to the quarterly reports, any material developments in the defense, such as rulings on important motions, mediation or settlement conferences, trial settings and settlement offers; and

   v. the **Company** and **Insured** shall agree to reasonable intervals for reimbursing **Defense Expense** in excess of the Retention.

## B. Settlement

The **Named Insured** has sole discretion to settle any **Claim**, if the total cost of **Loss** and **Defense Expense** is solely within the Retention.  If **Loss** or **Defense Expense** exhausts the Retention, no settlement shall be made without the **Company's** consent, which shall not be unreasonably withheld.

If the **Named Insured** is willing to accept the judgment of a trial or appellate court and the **Company** is not, the **Company** shall have the right to continue with the defense of the **Claim** and to seek post-trial relief or appeal from the judgment.  All **Loss** and **Defense Expense** arising from any new trial or appellate action, as well as any increase in the judgment, including interest, shall be paid by the **Company**.  The Limit of Liability shall not apply to any increase in the judgment or **Defense Expense**.

## C. Territory

The Policy covers **Events** and **Claims** that happen anywhere.

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

**D. Other Insurance**

If the **Insured** has other collectible insurance for a **Claim** also covered by the Policy, the insurance afforded by the Policy shall be excess over other such insurance, except any insurance specifically issued as excess.  Notwithstanding the foregoing, for a **Claim** covered by the Policy, for which there is other valid and collectible insurance and for which **Defense Expense** is incurred, reasonable and customary **Defense Expense** which would otherwise be covered by the Policy, and which exceeds the amount the **Insured** recovers from said other insurance, shall be credited toward fulfillment of the applicable Retention under the Policy for such **Claim**.  Nothing in this provision is intended to waive the **Company's** right to subrogate against any other insurer for its failure to fulfill its duty to defend the **Insured** in any **Claim**, and the **Insured** shall undertake no action nor enter into any agreement with other insurers which would compromise the **Company's** right to subrogation, without the **Company's** express written consent.

**E. Time of Inception, Period of Insurance**

The Policy shall commence on the effective date stated in the Declarations and continue in force until the expiration date also stated in the Declarations, unless earlier terminated.

**F. Changes in Covered Media**

The Policy shall be extended to any media-related **Subsidiary**, entity or joint venture newly created, merged, acquired or formed during the **Period of Insurance** for which the **Named Insured** is contractually obligated to provide coverage, provided that the **Named Insured** notifies the **Company** within ninety (90) days of such creation, merger, acquisition, venture or formation and is the surviving entity.  Any new media entity shall be subject to underwriting approval, and the **Named Insured** shall pay any additional premium that may be required.

**1.** The ninety (90) day notice requirement shall be waived for any new media entity if similar to **Covered Media**, and if projected gross annual revenues are less than ten (10) percent of the **Named Insured's** gross annual revenues;

**2.** Coverage under the Policy for newly merged, acquired or formed media entities or joint ventures shall not apply to any **Event** committed by such media entity or joint venture prior to the acquisition, merger, formation or joinder by the **Insured**, unless otherwise provided by Endorsement.  Any such **Event** continuing after the merger, acquisition, formation or joint venture shall relate back to the first **Event** and shall not be subject to coverage.  **SECTION III. RETENTION, LIMITS OF LIABILITY, DATE OF CLAIMS MADE, EVENTS AND RELATED EVENTS, DISCOVERY PERIOD, D. Date of Events and Related Events, 2.,** shall not apply to this Condition.

**G. Subrogation**

The **Company** shall be subrogated, to the extent of any payments made under the Policy, to all of the **Insured's** rights of recovery.  The **Insured** will not prejudice any subrogation rights and shall do whatever is necessary to secure such rights, but the **Named Insured** shall have sole discretion regarding the decision to exercise subrogation rights.  The **Company** shall have no subrogation rights against the **Insured**.  The apportioning of any recoveries shall be as follows:

## MUTUAL INSURANCE COMPANY LIMITED
### GLOBAL MEDIA LIABILITY POLICY 2.0
#### (CLAIMS MADE FORM)

1. first, to offset any legal expense associated with the subrogation action;

2. second, any entity or person (including the **Insured**), who has incurred any amount in excess of Retention up to the applicable Limit of Liability set forth in the Declarations, shall be reimbursed to the extent of any actual payment;

3. third, the **Company** shall be reimbursed to the extent of any actual payment; and

4. finally, any remaining balance shall be paid to any person or entity (including the **Insured**), who has contributed to the Retention.

If there is no recovery from subrogation proceedings conducted solely by the **Company**, it shall bear the full expense thereof.

## H. Payment, Indemnity and Proof of Loss

**Loss** and **Defense Expense** shall be paid in the currency of the United States of America. If such amounts are set forth in currency of any other country, conversion shall be made in United States dollars at the rate of exchange published by a mutually agreed upon source on the date that the **Company's** financial obligation was incurred.

No indemnity shall be paid by the **Company** until such amount is paid or incurred by the **Insured** in excess of the Retention, and the **Insured** is in compliance with all provisions of the Policy. Subject to any other provisions of the Policy, the **Company** shall reimburse the **Insured** for interim **Defense Expense** paid in excess of the Retention upon receipt of satisfactory evidence that the **Insured** has paid such amounts. Such interim payments shall not prejudice the rights of the **Company** or the **Insured** with respect to the ultimate calculation of the amount of **Defense Expense** payable. Proof of any **Loss** or **Defense Expense** paid in the aggregate by an **Insured** must be tendered to the **Company** within forty-five (45) days after the final payments are made by the **Insured**. Such period of forty-five (45) days may be extended in writing by the **Company**.

## I. Alternative Dispute Resolution

If any disagreement arises as to the amount of any **Loss** or **Defense Expense** subject to indemnity under the Policy, the **Insured** and **Company** agree to submit to alternative dispute resolution. The parties shall bear their own legal expense, but shall share equally in the cost of the proceeding.

## J. Action Against the Company

No suit or action under the Policy or the recovery of any **Claim** hereunder shall be sustainable in any court of law or equity unless, as conditions precedent thereto:

1. the **Insured** has fully complied with all the requirements of the Policy, including but not limited to satisfaction of all General Conditions, and has paid the Retention in full; and

2. such suit, action or recovery process has commenced within twelve (12) months after the filing of a Proof of Loss as stated in **SECTION VI. GENERAL CONDITIONS**, **H. Payment, Indemnity and Proof of Loss**.

## MUTUAL INSURANCE COMPANY LIMITED
### GLOBAL MEDIA LIABILITY POLICY 2.0
#### (CLAIMS MADE FORM)

**K.  Service of Process**

Except as otherwise stated in **SECTION VI. GENERAL CONDITIONS, J. Action Against the Company**, if the **Company** fails to pay any amount claimed to be due and owing under the Policy, the **Company**, at the request of the **Insured**, shall submit to the jurisdiction of a Court of competent jurisdiction in the United States.  Nothing herein shall constitute a waiver of the **Company's** right to commence any action, remove any action or to seek a transfer to another Court of competent jurisdiction in the United States in accordance with state or federal law.

Service of process against the **Company** shall be made upon:

Whiteford, Taylor & Preston, L.L.P.
Attention:  Jerome C. Schaefer
1800 M Street, N.W., Suite 450N
Washington, DC 20036
Phone: 202-689-3150

In any suit commenced against the **Company** under this Condition, the **Company** agrees to abide by the final decision of the Court or the Appellate Court in the event of appeal.  The above-referenced law firm is authorized and directed: (i) to accept service of process on behalf of the **Company** in such suit, or (ii) upon the request of the **Insured**, to provide a written undertaking stating that they agree to enter a general appearance on the **Company's** behalf if deemed necessary.

**L.  Cancellation and Nonrenewal**

1.  The Policy may be cancelled by the **Named Insured** at any time by giving written notice to the **Company** stating when, thereafter, the cancellation shall become effective.  The **Company** shall retain the customary short rate proportion of the premium for the period the Policy remained in force.

2.  The Policy shall not be cancelled by the **Company**, except for nonpayment of premium.  The **Company** shall provide the **Named Insured** written notice, not less than ten (10) days thereafter, when such cancellation shall become effective.  This Condition shall neither waive nor prejudice the **Company's** right to rescind the Policy in the event of any material misrepresentation made by the **Insured** in the Application.

3.  If the **Company** non-renews the Policy, the **Named Insured** shall receive notice at the address set forth in the Declarations at least ninety (90) days prior to the end of the **Period of Insurance**.

**M.  Bankruptcy of Insured**

Bankruptcy or insolvency of the **Insured** or of its estate shall not relieve the **Company** of any of its obligations under the Policy excess of the Retention and within the Limits of Liability.

**N.  Authorization**

The **Named Insured** is authorized to act on behalf of all **Insureds** with respect to all matters under the Policy, including but not limited to control of the defense of any **Claim** or settlement, giving and receiving notice and other communications, effecting or accepting any Endorsements

# MUTUAL INSURANCE COMPANY LIMITED
## GLOBAL MEDIA LIABILITY POLICY 2.0
### (CLAIMS MADE FORM)

to or canceling the Policy, paying any premium or receiving any return premium under the Policy.

**O. Changes to the Policy**

Notice to the **Insured's** agent or other person or knowledge possessed by same shall not effect a waiver or change to the Policy nor shall it estop the **Company** from asserting any rights under the Policy.  The Policy shall only be changed by written Endorsement that shall form a part thereof.

**P. Assignment**

Assignment of any interest, right or duty under the Policy shall not bind the **Company** without its prior written consent endorsed hereto.

**Q. Representations and Severability**

The **Named Insured** represents that the statements contained in the insurance Application or Renewal Application and all materials submitted therewith are accurate and complete and are submitted on behalf of all **Insureds**.  The **Named Insured** agrees that the **Company** has issued the Policy in reliance upon the truth of such representations.  With respect to the information set forth in the insurance Application or Renewal Application, only knowledge possessed by the chief executive officer, chief operating officer, chief financial officer, chief technology/privacy officer, president, partner, principal, risk manager, general counsel or other equivalent position thereof, or other person whose signature appears on the Application or Renewal Application, shall be imputed to the **Named Insured**.

IN WITNESS WHEREOF, the **Company** has caused the Policy to be signed by its President and Secretary at Hamilton, Bermuda, this 1st day of February, 2016.

Richard D. Spurling
President

Lucia Kempe
Secretary