UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

<div style="border:1px solid black">
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__3/31/2023__
</div>

TIME INC., SYNAPSE GROUP, INC., and
SYNAPSECONNECT, INC.,

                  Plaintiff,

          -against-

MUTUAL INSURANCE COMPANY LIMITED,

                  Defendant.

1:18-cv-6835 (MKV)

OPINION & ORDER
GRANTING
SUMMARY JUDGMENT
TO DEFENDANT

MARY KAY VYSKOCIL, United States District Judge:

Plaintiffs Time Inc., Synapse Group, Inc., and SynapseConnect, Inc. (collectively "Time") publish and market magazines. Time purchased a media liability policy from Defendant Mutual Insurance Company Limited ("Mutual"). Thereafter, Time faced, and ultimately settled, two putative class action lawsuits alleging that Time had violated various provisions of California law by automatically renewing customers' magazine subscriptions without consent. Mutual denied coverage, citing certain exclusions in the policy.

Time initiated this action against Mutual, asserting claims for declaratory judgment and breach of contract. Now before the Court are Time's motion for partial summary judgment on its declaratory judgment claims only and Mutual's cross-motion for summary judgment on all claims. Time seeks a judgment declaring that (1) Mutual is liable to reimburse Time for all defense expenses incurred by Time to defend against the underlying lawsuits; and (2) Mutual is liable to indemnify Time for certain portions of the settlement payments. Mutual maintains that it does not owe any coverage for the underlying lawsuits. For the reasons set forth below, Mutual's motion is GRANTED and Time's motion is DENIED.

# I.     **BACKGROUND**[1]

## A. **Background Facts**

Time Inc. is a media company that, as part of its business, has published a number of magazines, including Time, People, Sports Illustrated, Sunset, Fortune.  *See* Pl. 56.1 ¶ 2; Def. Counter ¶ 2; Def. 56.1 ¶ 65; Pl. Counter ¶ 65.  Time Inc. has used its wholly-owned subsidiaries Synapse Group, Inc. and SynapseConnect, Inc. to market magazine subscriptions.  *See* Pl. 56.1 ¶¶ 3–6; Def. Counter ¶¶ 3–6; Def. 56.1 ¶ 66; Pl. Counter ¶ 66.  In 2016, Time Inc. purchased a "Global Media Liability Policy 2.0" (the "Policy") from Defendant Mutual Insurance Company Limited ("Mutual").  Pl. 56.1 ¶ 7; Def. Counter ¶ 7.  The Synapse entities are additional insureds under the Policy.  Def. 56.1 ¶ 67; Pl. Counter ¶ 67.

Mutual stresses, and Plaintiffs (collectively, "Time") do not dispute that, in 2006, twenty-three state Attorneys General investigated Time's practices with respect to automatic renewals of magazine subscriptions.  Def. 56.1 ¶ 68; *see* Pl. Counter ¶ 68.  The Attorney General of California participated to investigate violations of two provisions of the California Business and Professions Code, sections 17200, *et seq.*, and 17500, *et seq.*, related to "unfair competition," including any "unfair . . . business . . . practice," and false or misleading statements, respectively.  *See* Def. 56.1 ¶ 69; Pl. Counter ¶ 69.  Time settled the investigations, without admitting liability, by entering into the Assurance of Voluntary Compliance or Disclosure ("AVCD") settlement with the states in 2006.  Def. 56.1 ¶ 71; Pl. Counter ¶ 71; *see* Pl. Counter ¶ 68.  The AVCD settlement is not one of

---

[1] The facts are drawn from the evidence cited in the parties' Local Civil Rule 56.1 statements [ECF No. 70 ("Pl. 56.1"); ECF No. 71-1 ("Def. Counter"); ECF No. 76 ("Def. 56.1"); ECF 77 ("Pl. Counter")], the declarations submitted in connection with the parties' motions, and the exhibits attached thereto [ECF Nos. 68, 69, 69-1 ("Policy"), 75].  Unless otherwise noted, if only one party's 56.1 statement or evidence is cited, the other party does not dispute the fact asserted, has not offered admissible evidence to refute the fact, or merely disagrees with the inferences to be drawn from the fact.  Both sides represent that there are no disputes of material fact with respect to their motions for summary judgment [ECF No. 67 ("Pl. Mem.") at 1; *see* ECF No. 71 ("Def. Mem.") at 12–13].

the underlying lawsuits at issue in this action.  Rather, Mutual offers the AVCD settlement as evidence that the underlying lawsuits, described below, are not covered by the Policy Mutual later sold Time, also described below.

As part of the AVCD settlement, Time agreed to "Clearly and Conspicuously" disclose to customers if they were signing up for "Automatic Renewal" subscriptions.  Def. 56.1 ¶ 72; *see* Pl. Counter ¶ 72.  In the wake of the AVCD settlement, California enacted the Automatic Renewal Law "to end the practice of ongoing charging of consumer credit or debit cards or third party payment accounts without the consumers' explicit consent."  Cal. Bus. & Prof. Code §§ 17600, *et seq.*; *see* Def. 56.1 ¶ 74; Pl. Counter ¶ 74.

**B.  The Policy**

In 2016, Time purchased the Policy from Mutual [ECF No. 69-1 ("Policy")].  *See* Pl. 56.1 ¶ 7; Def. Counter ¶ 7; Def. 56.1 ¶ 61; Pl. Counter ¶ 61.  On the first page, above Section I, the Policy contains a boldface "**NOTICE TO THE INSURED**" that begins: "**THIS IS AN INDEMNITY POLICY.   [MUTUAL] DOES NOT HAVE A DUTY TO DEFEND ANY CLAIM AGAINST THE INSURED.**"  Policy at 1 (emphases in original) [ECF 69-1 at 33].  Section I, entitled Indemnity Agreement, then describes the circumstances in which Mutual "shall indemnify" Time.  Policy § I.A.

As relevant to the parties' motions, the Policy requires Mutual to reimburse Time for expenses incurred to defend and settle lawsuits alleging negligence in Time's media business.  Specifically, the Indemnity Agreement provides that Mutual "shall indemnify [Time] for Loss and Defense Expense . . . because of liability imposed by law or Assumed Under Contract as a result of any Claim arising out of an Event committed by or on behalf of" Time "and arising from" one of nineteen enumerated claims.  Policy § I.A.  Among the enumerated claims is "negligence,

including any actual or alleged error, omissions, misstatement, or misleading statement." Policy § I.A.12. "Loss" includes settlements, although it does not include the cost of complying with injunctive relief or "unjust enrichment." Policy § IV.M.

The Policy also contains a number of exclusions from coverage. *See* Policy § V. Three exclusions are relevant. First, Exclusion A provides that Mutual is not obligated to indemnify Time for losses or defense expenses from claims "arising out of any actual or alleged violation of any law" related to "antitrust, price fixing, price discrimination, racketeering, restraint of trade, monopolization, or any unfair business practice or conspiracy related thereto." Policy § V.A.1; *see* Pl. 56.1 ¶ 21; Def. Counter ¶ 21. Second, Exclusion F excludes from coverage claims "arising out of any actual or alleged false, misleading, fraudulent or deceptive Advertising, but only with respect to [Time's] intentional conduct." Policy § V.F; *see* Pl. 56.1 ¶ 21; Def. Counter ¶ 21. Third, Exclusion G excludes from coverage claims "arising out of any actual or alleged breach of any express or implied contract or agreement," with certain exceptions. Policy § V.G; *see* Pl. 56.1 ¶ 21; Def. Counter ¶ 21.

## C. **The Underlying Lawsuits**

In May 2016, two plaintiffs, including Shannon Price, filed a putative class action against Time and Synapse (the "Price action"), alleging that Time and Synapse had violated California law by enrolling the plaintiffs, and other putative class members, in automatically-renewing magazine subscriptions without their consent. Pl. 56.1 ¶ 25; Def. Counter ¶ 25. The complaint in the Price action recited the history of the AVCD settlement in which "Time agreed that it would 'Clearly and Conspicuously' disclose automatic renewal offer terms" [ECF No. 69-5 ("Price SAC") ¶¶ 19, 20]. The Price complaint further alleged that, immediately after the AVCD settlement, Time acquired Synapse as "a wholly-owned subsidiary" and the companies "thereafter

conducted their business affairs on the premise that . . . the AVCD did not apply to Synapse" or to "the subscriptions for Time publications that were marketed by or through Synapse for Time's benefit." Price SAC ¶ 21.  The Price complaint then described the enactment of the Automatic Renewal Law.  SAC ¶¶ 22–25.

The Price plaintiffs alleged that, in connection with an online "survey advertisement," Time and Synapse had offered them "a full year of issues" of "up to 5 complimentary magazines" if the plaintiffs paid a mere $2.00 per magazine selection; however, "[u]nbeknownst" to the plaintiffs, Time and Synapse had enrolled them in subscriptions that automatically renewed each year at much higher prices.  Price SAC ¶¶ 28, 29, 34, 35 36.  The Price plaintiffs alleged that Time and Synapse had failed to present the automatic renewal offer terms "in a clear and conspicuous manner," instead burying disclosures in "tiny print" and "below the space for entry of credit card information."  Price SAC ¶¶ 30, 32, 35.  The Price plaintiffs alleged that Time and Synapse had "knowingly and willfully" violated California law.  Price SAC ¶ 37.

The Price complaint asserted five causes of action.  First, the Price plaintiffs asserted claims for violation of the Automatic Renewal Law, Cal. Bus. & Prof. Code §§ 17600 *et seq.*, on the ground that, "among other things," Time and Synapse "fail[ed] to present automatic renewal or continuous service offer terms in a clear and conspicuous manner."  Price SAC ¶ 56.  Second, the Price plaintiffs asserted claims for violation of another California statute that has to do with false advertising, the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*, and the Price plaintiffs expressly alleged that Time and Synapse had acted "knowingly, willfully, and with oppression, fraud, and/or malice, within the meaning" of that statute.  Price SAC ¶ 65.  Third, the Price plaintiffs asserted claims for conversion, again alleging that Time and Synapse had acted "knowingly, willfully, and with oppression, fraud, and/or malice."  Price SAC ¶ 71.  Fourth, the

5

Price plaintiffs asserted claims for violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, noting that that statute encompasses "any unlawful, unfair or fraudulent business act or practice." Price SAC ¶ 74. Finally, fifth, the Price plaintiffs asserted claims for unjust enrichment. Price SAC ¶ 82. The Price action sought damages and injunctive relief, but the claims for injunctive relief were dismissed.

In June 2018, plaintiffs' counsel in the Price action filed a similar putative class action on behalf of another plaintiff, Cathie Cruz, against Synapse only (the "Cruz" action) [ECF No. 69-8 ("Cruz Cmpl.")]. *See* Def. 56.1 ¶ 88; Pl. Counter ¶ 88. The complaint in the Cruz action accused Synapse of a "scheme . . . to get its hands on consumers' credit card or debit card information," alleging that "Synapse knows" that customers "have no clue that the magazine offer[s]" contain automatic renewal provisions. Cruz Cmpl. ¶ 2. The Cruz complaint contained several similar allegations that Synapse knew customers had not agreed to ongoing charges and that Synapse "ma[d]e only a thin pretense of any effort to notify consumers" to "create a veneer of plausibility." Cruz Cmpl. ¶¶ 3, 6.

The Cruz complaint asserted causes of action for: (1) violation of the Automatic Renewal Law, Cal. Bus. & Prof. Code §§ 17600 *et seq.*; (2) violation of the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*; (3) violation of the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*; and (4) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* Unlike the Price action, the Cruz action did not seek money damages. Rather, it sought only injunctive relief and attorneys' fees and costs. *See* Def. 56.1 ¶ 88; Pl. Counter ¶ 88.

In October 2018, Time reached an agreement to settle both the Price and Cruz actions. Def. 56.1 ¶ 93; Pl. Counter ¶ 93. The settlement agreement included both monetary and injunctive

relief, including a settlement fund of $4,980,000 and changes to Plaintiffs' automatic renewal practices. *See* Def. 56.1 ¶ 94; Pl. Counter ¶ 94. In June 2019, pursuant to the parties' agreement, the final settlement was approved by the California state court in which the Cruz action was filed. Def. 56.1 ¶ 100; Pl. Counter ¶ 100.

### D.  **The Coverage Dispute**

Time provided Mutual with initial notice of the Price action in June 2016. Pl. 56.1 ¶ 32; Def. Counter ¶ 32. In a July 11, 2016 letter, Mutual denied coverage for the Price action [ECF No. 74-14 ("July 11, 2016 Letter") at 5]. It stated that none of the claims in the Price complaint met the requirements for indemnity under Section I of the Policy. Def. 56.1 ¶ 102; Pl. Counter ¶ 102. Mutual also cited Exclusion A, Exclusion F, and Exclusion G as additional reasons to deny coverage under the Policy. Def. 56.1 ¶ 104; Pl. Counter ¶ 104.

Time intiated this action by filing a complaint, which it later amended twice [ECF Nos. 1, 22, 40 ("Time SAC")]. In the Second Amended Complaint, Time asserts claims for declaratory judgment and breach of contract. Time seeks a judgment declaring that "Mutual is liable to reimburse Time for all Defense Expenses incurred by Time to defend the Underlying Cases" and declaring that "Mutual is liable to indemnify Time for Time's $4,980,000 settlement payment in the Underlying Cases." SAC at 10.

Time now seeks partial summary judgment [ECF Nos. 65, 66, 67 ("Pl. MSJ"), 68, 69, 70, 79 ("Pl. Reply")]. Specifically, Time seeks a declaration that (1) Mutual is liable to reimburse Time for all defense expenses incurred by Time to defend against both underlying class-action lawsuits, and (2) Mutual is liable to indemnify Time for the portions of its $4.98 million settlement attributable to (a) attorney fees, (b) litigation expenses, (c) class representative service payments, and (d) settlement administrator fees and expenses. Pl. MSJ at 18–19.

Mutual opposes Time's motion for partial summary judgment [ECF No. 71 ("Def. Opp.")]. Mutual also cross-moves for summary judgment on all Time's claims, arguing that Mutual does not owe coverage under the Policy [ECF Nos. 74 ("Def. MSJ"), 75, 76, 78 ("Def. Reply")].  Time opposes Mutual's cross-motion for summary judgment [ECF No. 72 ("Pl. Opp.")].

## II.    LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law," and is genuinely disputed if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).  In a diversity case, a federal court applies state substantive law.  *See Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002).

## III.    DISCUSSION

Both sides agree that there are no disputes of material fact relevant to their motions and that New York law governs. *See* Def. MSJ at 12–13; Pl. MSJ at 1; Def. Opp. at 2.  Time contends that, under New York's exceedingly broad duty to defend, Mutual must reimburse Time for all of Time's defense expenses (and portions of its $4.98 million settlement) because claims in "the underlying complaints suggest 'a reasonable possibility' of coverage" under the Policy.  Pl. MSJ at 1–2, 10.  Time stresses that the underlying lawsuits alleged that Time had failed to clearly and conspicuously disclose automatic renewal terms, and such allegations at least arguably trigger the Policy's coverage for "negligence, including any actual or alleged error, omission, misstatement, or misleading statement."  Pl. MSJ at 2, 9.  However, the Policy is an "indemnity-only" policy that

does not impose a duty to defend. Def. MSJ at 3. Thus, Mutual is required to indemnify Time for defenses expenses (and settlement payments) only for claims that actually fall within the Policy's coverage. And while Time is correct that negligence claims trigger coverage, the underlying lawsuits clearly allege intentional misconduct by Time.[2]

### A. The Duty To Defend Is Broader than the Duty To Indemnify.

Under New York law, it is fundamental that the duty to defend is broader than the duty to indemnify. *Automobile Insurance Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137, 850 N.E.2d 1152, 1155 (2006). If an insurer has a duty to defend, that duty arises whenever allegations in a complaint against the insured state a claim that *arguably* could fall within the scope of the insurance policy. *Fieldston Prop. Owners Association, Inc. v. Hermitage Insurance Co.*, 16 N.Y.3d 257, 264, 920 N.Y.S.2d 763, 945 N.E.2d 1013 (2011). The narrower duty to indemnify, on the other hand, applies only to claims that *actually* are covered. *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 115 (2d Cir. 2005); *Frontier Insulation Contractors, Inc. v. Merchants Mutual Insurance Co.*, 91 N.Y.2d 169, 178, 690 N.E.2d 866, 870 (1997). The Second Circuit, interpreting New York law, has recognized that an indemnity-only policy, that imposes no duty to defend, may "create[] a duty to pay 'defense costs for claims that are established to be covered . . . ,' *i.e.*, claims for which the insurer has a duty to indemnify, 'and not for claims only potentially falling within the policy's coverage.'" *Petroterminal De Panama v. Houston Casualty Co.*, 659 F. App'x 46, 50 (2d Cir. 2016) (quoting *Stonewall Insurance Co. v. Asbestos Claims Management. Corp.*, 73 F.3d 1178, 1219 (2d Cir. 1995)).

---

[2] It is telling that Time now seeks a judgment declaring that Mutual must indemnify Time for only those portions of the $4.98 settlement that resemble defense costs. This seems to be a tacit concession that, at least at this stage, Time cannot argue in good faith that the claims in the underlying lawsuits actually fall within the Policy's coverage. If the underlying lawsuits itself asserted claims for negligence, the money paid to settle those lawsuits would clearly be a covered Loss, and Time would be seeking summary judgment declaring that Mutual is required to indemnify Time for the entire settlement payment.

### B.  Policy Interpretation

Under New York law, insurance policies are contracts, and a court interpreting an insurance policy must follow general "principles of contract interpretation."  *Burlington Insurance Co. v. NYC Transit Authority*, 29 N.Y.3d 313, 321, 79 N.E.3d 477 (2017) (quoting *Universal American Corp. v National Union Fire Insurance Co. of Pittsburgh, Pa.*, 25 NY3d 675, 680 (2015)).  "It is axiomatic that a contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language employed."  *Jin Ming Chen v. Insurance Co. of the State of Pennsylvania*, 36 N.Y.3d 133, 138 (2020) (alteration omitted) (quoting *Breed v Insurance Co. of North America*, 46 NY2d 351, 355 (1978)).  "The language of a policy, when clear and unambiguous, must be given its plain and ordinary meaning."  *Id.*; *see Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) (If "an agreement is unambiguous on its face, it must be enforced according to the plain meaning of is terms").

### C.  Mutual Does Not Have a Duty To Defend under the Policy.

Time contends that "traditional duty to defend principles . . . apply" to this case.  Pl. MSJ at 17.  However, on the first page of the Policy, above Section I, the Policy contains a boldface "**NOTICE**" that begins: "**THIS IS AN INDEMNITY POLICY.  [MUTUAL] DOES NOT HAVE A DUTY TO DEFEND ANY CLAIM AGAINST THE INSURED.**"  Policy at 1 (emphases in original) [ECF 69-1 at 33].  Section I, entitled Indemnity Agreement, then provides that Mutual must "indemnify" Time for defense expenses in connection with claims arising out of "negligence" in Time's media business.  Policy § I.A.12.

Time simply ignores the unequivocal statement at the top of the Policy that Mutual does not have duty to defend.  Time insists that Mutual effectively does have duty to defend because, Time contends, "the Policy requires Mutual to pay defense expenses at 'reasonable intervals.'"  Pl.

MSJ at 17 (citing Pl. 56.1 ¶ 23).  Time then cites authority for the proposition that New York courts treat a "duty to advance" defense costs like a duty to defend, requiring the insurer to pay defense costs if the claims against the insured arguably could give rise to a duty to indemnify.  Pl. MSJ at 17 (citing *Port Authority of New York & New Jersey v. Brickman Group Ltd., LLC*, 181 A.D.3d 1, 21, 115 N.Y.S.3d 246 (2019) and *QBE Americas, Inc. v. ACE American Insurance Co.*, 164 A.D.3d 1136, 1138 (1st Dep't 2018)).

The Policy does not, however, impose a general duty to advance or reimburse defense costs.  Time simply mischaracterizes the relevant provision, citing its own 56.1 Statement instead of the language of the Policy.  *See* Pl. MSJ at 17 (citing Pl. 56.1 ¶ 23).  Time's 56.1 Statement cites Section VI.A.4.c.v of the Policy, which states that, in certain circumstances in which Mutual and Time are cooperating in the defense, "the Company and Insured shall agree to reasonable intervals for reimbursing Defense Expense[s]."  Policy § VI.A.4.c.v.  Elsewhere, the Policy provides that any "interim payments" of defense expenses "shall not prejudice . . . the ultimate calculation of the amount of Defenses Expense" Mutual actually owes under the Indemnity Agreement.  Policy § VI.H.  The Policy also contemplates an alternative scenario in which Mutual does not make any interim payments, and, instead, a bill for all of the insured's defense expenses, "paid in the aggregate," is "tendered" to Mutual "within forty-five (45) days after the final payments are made by the Insured."  Policy § VI.H.  Thus, read in context, the reference to "reasonable intervals" that Time selectively quotes does not reflect an unequivocal promise by Mutual to reimburse defense expenses in all cases.

The Court must "give effect" to the "unequivocal language" establishing that the Policy does not impose a duty to defend.  *Jin Ming Chen*, 36 N.Y.3d at 138.  To be sure, "it does not follow from the absence of a duty to defend that there is no obligation to reimburse defense costs."

*Port Authority of New York & New Jersey*, 181 A.D.3d at 15.  But the Policy does not impose an obligation to reimburse defense costs in the circumstances of this case. Time did not collect any "interim payments" during the litigation of the underlying lawsuits. Policy § VI.H.  And the "ultimate calculation the amount of Defenses Expense" that Mutual actually owes Time is zero because, as explained below, the claims in the underlying lawsuits are not covered by the Indemnity Agreement.  Policy § VI.H.

### D.  The Indemnity Agreement Does Not Cover Alleged Intentional Misconduct.

Since the Policy does not impose a duty to defend, or a general obligation to reimburse all defense costs, Time must seek indemnification under the Policy.  Time seeks indemnification for all defense expenses and "portions" of its settlement.  Pl. MSJ at 18–19.  Time has the burden "to establish coverage" under the Indemnity Agreement.  *Consolidated Edison Co. v. Allstate Insurance Co.*, 98 N.Y.2d 208, 218, 774 N.E.2d 687 (2002).

To trigger coverage under the Indemnity Agreement in Section I of the Policy, Time must establish that its defense expenses and settlement were incurred "as a result of any Claim . . . arising from" one of the enumerated claims in Section I.  Policy § I.A.  Time cites the subsection for "negligence, including any actual or alleged error, omission, misstatement, or misleading statement."  Policy § I.A.12.  Thus, Time must establish that the underlying lawsuits asserted claims arising from negligence.

The underlying lawsuits, however, did not allege negligence.  Rather, the complaints unmistakably alleged that Time and Synapse had engaged in intentional misconduct.  As noted above, the Price complaint described, at length, both the history of the AVCD settlement, in which "Time agreed that it would 'Clearly and Conspicuously' disclose automatic renewal offer terms," and the subsequent enactment of the Automatic Renewal Law that requires much the same.  SAC

¶¶ 19, 20, 22–25. The Price complaint included all of this background because it specifically alleged that Time and Synapse "knowingly and willfully" engaged in illegal automatic renewal practices. Price SAC ¶ 37. The Cruz complaint, too, alleged an intentional "scheme" by Synapse "to get its hands on consumers' credit card or debit card information," expressly alleging that "Synapse knows" customers "have no clue that the magazine offer[s]" contain automatic renewal provisions. Cruz Cmpl. ¶ 2.

Time insists that the claims for violation of the Automatic Renewal Law trigger coverage because, in asserting those claims, the underlying lawsuits allege that Time and Synapse "fail[ed] to present automatic renewal or continuous service offer terms in a clear and conspicuous manner." Price SAC ¶ 56; *accord* Cruz Cmpl. ¶ 42. Time contends that this alleged failure "plainly is an alleged 'error,' 'omission,' or 'misstatement.'" Pl. MSJ at 9. But the Policy does not cover every claim involving any alleged error, omission, or misstatement. The Policy covers only claims of "negligence" involving an "alleged error, omission, misstatement, or misleading statement." Policy § I.A.12. The underlying lawsuits alleged that Time and Synapse intentionally omitted or buried required disclosures. *See* Price SAC ¶ 37; Cruz Cmpl. ¶ 2.

All of the claims in the Price and Cruz complaints were based on the same alleged conduct. Thus, the allegations that Time and Synapse had "engaged in [the alleged] practices knowingly and willfully" applied to not only the claims for violation of the Automatic Renewal Law, but also all of the other claims in both complaints. Price SAC ¶ 37; *see also* Cruz Cmpl. ¶ 2. The Price complaint also repeated the allegation that Time and Synapse had engaged in intentional misconduct in its claims for violation of the Consumers Legal Remedies Act and for conversion. *See* Price SAC ¶¶ 65 ("Defendants' conduct . . . was undertaken . . . knowingly, willfully, and with

oppression, fraud, and/or malice"), 71 (same).  There can be no dispute that Mutual is not obligated to indemnify defense expenses or settlement payments for these claims.

Applying the standard for the duty to defend, Time argues that Mutual must pay for all of Time's defense expenses, despite the allegations of "intentional misconduct," because "at least some of the complaints' allegations suggest a 'reasonable possibility of coverage.'"  Pl. MSJ at 9, 10 (quoting *Travelers Indemnity Co. v. Harleysville Insurance Co. of New York*, 2020 WL 1304085, at *4 (S.D.N.Y. Mar. 19, 2020)).  There is perhaps one claim in the Cruz complaint that arguably falls within the scope of coverage.  In asserting its claim for violation of the Consumers Legal Remedies Act, the Cruz complaint alleged: "Defendants' conduct alleged herein was undertaken by Defendants knowingly, willfully, and with oppression, fraud, and/or malice, within the meaning of [the statute].  Invoking the right to plead in the alternative, Plaintiffs alternatively allege that the conduct alleged herein was undertaken by Defendants with an absence of due care."  Cruz Cmpl. ¶ 47.  But, as explained above, this is not a duty to defend case.  It is not enough for Time to point to one alternative claim that arguably might trigger coverage.

Moreover, New York courts have repeatedly ruled that there is no coverage under a negligence policy where, as here, the "gravamen of the underlying action seeks to hold the [insured] liable for . . . intentional acts."  *Kantrow v. Security Mutual Insurance Co.*, 49 A.D.3d 818, 819, 854 N.Y.S.2d 738 (2008); *see Board of Education of East Syracuse-Minoa Central School District v. Continental Insurance Co.*, 198 A.D.2d 816, 817, 604 N.Y.S.2d 399, 400 (1993); *Allstate Insurance Co. v. Mugavero*, 79 N.Y.2d 153, 162, 589 N.E.2d 365 (1992) (disregarding a conclusory allegation of negligence in one cause of action); *see also Silverman Neu, LLP v. Admiral Insurance Co.*, 933 F. Supp. 2d 463, 478 (E.D.N.Y. 2013) (rejecting insured's argument for coverage because "*not all of the allegations . . . are based upon 'knowingly wrongful, dishonest,*

fraudulent, criminal or malicious acts'" (emphasis in original)); *cf.* Parkset Plumbing & Heating Corp. v. Reliance Ins. Co., 87 A.D.2d 646, 647, 448 N.Y.S.2d 739, 740 (1982) (no coverage for allegations "sounding in contract and not in negligence"); Ostrager & Newman, Handbook on Insurance Coverage Disputes § 5.03[a] (21st ed. 2022) ("one . . . 'shot-gun' allegation' in a complaint will not suffice to create a duty to defend an action which is otherwise not covered"). Given the clear gravamen of the Price and Cruz complaints, Time cannot establish coverage under the Indemnity Agreement.

### E.  Exclusions and the Nature of the Relief Available in the Underlying Lawsuits

Mutual also argues that, even if the allegations in the underlying lawsuits did meet the requirements for indemnity under Section I of the Policy, several exclusions would preclude coverage.  Specifically, Exclusion A provides that Mutual is not obligated to indemnify Time for claims arising out of "any unfair business practice."  Def. MSJ at 17 (quoting Policy § V.A.1). Exclusion F excludes from coverage claims "arising out of any actual or alleged false, misleading, fraudulent or deceptive Advertising, but only with respect to [Time's] intentional conduct."  Policy § V.F.  Exclusion G excludes from coverage claims "arising out of any actual or alleged breach of any express or implied contract or agreement," with certain exceptions.  Policy § V.G.

With respect to Exclusion A, Mutual stresses that the underlying lawsuits allege violations of the California Business and Professions Code, prohibiting "unfair competition," including any "unfair . . . business . . . practice."  Def. MSJ at 17; Cal. Bus. & Prof. Code § 17200.9.  Indeed, all of the claims in the underlying lawsuits relate to allegedly unfair business practices.  *See* Def. MSJ at 17–18. With respect to Exclusion F, Mutual reiterates that the underlying lawsuits allege intentional misleading conduct.  *See* Def. MSJ at 18–19.  Mutual contends that Exclusion G applies because the underlying lawsuits arise out of "a dispute about the scope of an initial subscription

agreement" between Time and the plaintiffs in the underlying lawsuits.  *See* Def. MSJ at 19–21.
Time opposes these arguments.

 Mutual also stresses that for several causes of action in the underlying lawsuits, the only
remedy is restitution or injunctive relief, and the Policy does not provide coverage for restitution
or the cost of complying with injunctive relief.  *See* Def. MSJ at 21–23; Policy § IV.M.  Mutual
argues that—even if the allegations in the underlying lawsuits did meet the requirements for
indemnity under Section I of the Policy and the exclusion do not apply—Mutual does not owe any
coverage related to defending against causes of action for which the only remedy is restitution or
injunctive relief.  *See* Def. MSJ at 21–23.  Time disagrees.

 Because Time cannot establish coverage under the Indemnity Agreement, the Court
declines to address the parties' arguments about the Policy exclusions and the nature of the relief
available in the underlying lawsuits.

## IV. CONCLUSION

 For the reasons stated above, Mutual's motion for summary judgement [ECF No. 63] is
GRANTED, and Time's motion for partial summary judgment [ECF No. 66] is DENIED.  The
Clerk of Court respectfully is requested to terminate the motions pending at docket entries 63 and
66 and to close this case.

**SO ORDERED.**

Date: **March 31, 2023**
   **New York, NY**

           **MARY KAY VYSKOCIL**
           **United States District Judge**